FILED
COURT OF APPEALS
DIVISION II

2014 OCT -7 AM 10: 56

STATE OF WASHINGTON

BY____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MIKE HOBBS,<br><br>          Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, WASHINGTON STATE AUDITOR'S OFFICE, a Washington State Agency,<br><br>          Respondent. | No. 44284-1-II<br><br><br><br>PUBLISHED OPINION |

LEE, J. — Mike Hobbs appeals the superior court's order dismissing his Public Records Act (PRA)[1] claim against the State Auditor's Office (Auditor). Hobbs argues that the superior court erred in concluding that the Auditor cannot be liable for potential errors while a PRA request is still pending, the Auditor's initial response letter was adequate, and the scope of the Auditor's search was reasonable. Because we hold the superior court did not err, we affirm.

## FACTS

On November 28, 2011, attorney Christopher W. Bawn filed a PRA request to the Auditor on behalf of his client Mike Hobbs. The request was for public records related to the Auditor's investigation of a whistleblower complaint regarding the Department of Social and Health Services

---

[1] Ch. 42.56 RCW.

(DSHS) and the use of "SSI[2] Dedicated Accounts" for foster children. Clerk's Papers (CP) at 105. The request included a large amount of technical information related to the records and record retention. Mary Leider, the Auditor's public records officer, received the request.

A.    AUDITOR'S RESPONSE TO HOBBS' REQUEST

On December 2, 2011, Leider sent Hobbs a response letter stating, "As we understand the subject matter of your request, you are requesting all records related to investigations of DSHS that pertain specifically to SSI Dedicated Accounts." CP at 108. The letter informed Hobbs that the records would be provided in installments and that the Auditor expected the first installment to be available for inspection, by appointment, anytime after December 16. The letter also stated that DSHS client records would be sent first to DSHS to ensure all the appropriate redactions were made to protect the foster children's privacy.

Leider was unable to contact Hobbs' attorney by phone or email to arrange for the inspection of documents; so on December 21, the Auditor made the first installment of records available to Hobbs electronically. As discussed in more detail below, Hobbs responded to this first installment by filing suit against the Auditor for alleged PRA violations.[3]

---

[2] "SSI" is the acronym for Supplemental Security Income and is a federal income supplement program designed to help aged, blind and disabled people who have little or no income. *Available at Supplemental Security Income Home Page—2014 Edition*, U.S. SOC. SECURITY ADMIN., http://www.ssa.gov/ssi/ (last visited Sept. 26, 2014).

[3] Hobbs filed a lawsuit against the Auditor on December 23, two days after Leider made the December 21 installment available.

No. 44284-1-II

On December 30, the Auditor provided Hobbs with a new copy of the documents, using code numbers the Auditor created to correspond to explanations of the redactions. Leider also informed Hobbs that the next installment of records would be ready on January 13, 2012.

On January 6, 2012, the Auditor's counsel sent Hobbs a letter confirming his requested prioritization of his three pending records requests (two of which are not the subject of this appeal) and stating,

> In our conversation, I requested that you contact me if you believe the Auditor has made a mistake in processing your public records requests. The Auditor wants to hear from you if you think there are problems, so the Auditor may address your concerns promptly if it is possible to do so. This request for cooperation from you pertains to any concerns you may have about redactions, validity or explanation of claimed exemptions, or other concerns. For example, you mentioned that the Auditor's public records officer provided you with an updated version of the first installment of its response to your November 28, 2011 request, and that this update was provided promptly. This approach avoids unnecessary use of the court's time and resources.

CP at 121-22. Also on January 6, Leider sent Hobbs an e-mail informing him that the final installment of records would be ready on February 13.

On January 19, Leider contacted Hobbs to inform him of some technical issues that had arisen in providing e-mails containing metadata. After consulting with Pete Donnell, audit manager for the statewide technology audit team, the Auditor developed a method to provide the documents in the format that Hobbs had requested. Leider informed Hobbs that she would prepare five e-mails, send them to Hobbs to confirm they were in an acceptable format, and then process the remaining 88 e-mails. After confirming the e-mails were in a format acceptable to Hobbs, Leider told Hobbs the remaining 88 e-mails would be ready on March 1.

3

On February 13, Leider sent Hobbs the first 1,010 pages of the foster child records redacted by DSHS. On February 14, Leider provided Hobbs with another updated copy of the December 30, 2011 production addressing additional concerns Hobbs attorney had raised. On February 16, Leider provided the remaining 1,010 pages of foster child records redacted by DSHS. On February 17, Leider sent Hobbs an e-mail stating that she had identified technical issues with some of the files and sent Hobbs another copy of the DSHS records with corrections to resolve the technical issues.

On February 27, Leider sent Hobbs another e-mail stating that she had reviewed a declaration he had submitted to the court complaining about technical issues involving the metadata of the 17 different versions of the Auditor's whistleblower investigation closure letter. Leider stated that she had consulted with Donnell, corrected the problem, and was providing new versions of the letter with the metadata issues resolved.

On March 1, Leider provided Hobbs with the additional e-mails that Leider had contacted Hobbs about on January 19. She also sent Hobbs an e-mail stating that the Auditor believed it had provided all the responsive documents to Hobbs' public records request, and that Hobbs should contact her with any concerns he may have.

On March 29, Leider sent Hobbs an e-mail in which she noted that Hobbs had not downloaded the final installment of the records from March 1 and that the link to the "Secure File Transfer System" had expired. CP at 302. She notified Hobbs that she was reposting a new transfer link so that he would be able to access the installment.

4

B.     HOBBS' LITIGATION AGAINST THE AUDITOR

Meanwhile, on December 23, 2011, almost immediately after the Auditor had provided the first installment of documents in response to Hobbs' public records request, H obbs filed suit against the Auditor for alleged PRA violations, primarily complaining about redactions to the records produced in the December 21, 2011 first installment.  On January 20, 2012, Hobbs filed a motion requesting in camera review of the Auditor's December 21 and December 30[4] installments of produced records.  The superior court heard the motion on February 14 and reviewed both the December 21 and December 30 productions in camera.  On February 15, the superior court ruled that exemption codes the Auditor had used complied with the PRA requirements.

On February 17, based on the superior court's ruling after the in camera review, the Auditor filed a motion seeking a ruling that (1) "the redactions contained in the Auditor's December 30, 2011 production, as supplemented by the 5 pages of updated redactions provided to the requester on February 14, 2012, [were] proper"; and (2) Hobbs had no cause of action with respect to the December 21, December 30, and February 14 installments because the Auditor was still in the process of responding to Hobbs' public records request and, thus, had not denied Hobbs any records.  CP at 143.  On March 30, the superior court ruled that the redactions made in the December 30 installment, as updated in the February 14 installment, complied with the PRA.  And, the superior court ruled that Hobbs did not have a cause of action as to the December 21, December 30, and February 14 installments.

---

[4] The December 30 response included the same documents provided in the December 21 installment, but with code numbers that corresponded to explanations for the redactions.

A final hearing on Hobbs' suit against the Auditor was held on August 17, 2012, after the Auditor's final installment of Hobbs' public records request. Hobbs raised numerous issues, including that (1) the Auditor's response letter on December 2, 2011 violated the PRA because it did not contain a date for when the response to his request would be completed; (2) the initial copies of the letter closing the whistleblower investigation (the December 21 installment) were disclosed with improper metadata; (3) the investigator originally assigned to the case did not properly search her electronic case file, and thus, certain records were not disclosed; (4) the Auditor improperly interpreted Hobbs' public records request and did not include documents such as file folder tabs and documents recovered from disaster recovery tapes; and (5) the first installment of records was improperly redacted.[5]

The Auditor submitted numerous declarations from employees who had worked on compiling the responses to Hobbs' public records request. Leider submitted an affidavit comprehensively explaining the entire process of responding to Hobbs' public records request. Kim Hurley, the special investigations manager, declared that she had compiled numerous search terms and used those terms to search "the Auditor's Sharepoint program for documents related to Whistleblower case 10-005, my individual Outlook mailboxes, Teammate, and my Auditor network folder." CP at 246. She had also searched the Auditor's "evault," which stores all Auditor employee e-mails in a place where employees cannot delete them. CP at 246.

---

[5] Hobbs also stated he would not "waive" this issue, despite the superior court's earlier adverse rulings. CP at 653.

Julie Cooper, the special investigations coordinator, declared that she had searched her own e-mail box and two other employees' e-mail boxes for responsive e-mails and documents. She had also searched the "evault" to ensure all responsive e-mails were disclosed to Leider. CP at 243. Jan Jutte, the director of legal affairs, declared that she had worked with Leider on compiling the response to Hobbs' public records request, which work had included numerous discussions and meetings to plan and coordinate the interpretation, search, collection, and redaction of responsive records.

Cheri Elliott was the original investigator assigned to the whistleblower complaint. She stated that she maintained a paper file of the investigation after closing the complaint and that the electronic documents were deleted after the investigation was closed and the paper file was compiled. After being notified of the public records request, she had scanned the final paper file into an electronic document for disclosure. She had also searched her e-mail boxes and her "Word program folder on the Auditor network." CP at 252. And, statewide technology audit team manager Donnell submitted an affidavit explaining how he had performed the e-mail redactions while maintaining the metadata. He also explained how he had corrected Hobbs' alleged problem with the metadata in the 17 different versions of the Auditor's letter closing the whistleblower investigation.

On November 9, 2012, the superior court issued its final order, ruling that the Auditor's initial response complied with the PRA requirement to provide a response within five days and that, after the initial response, the Auditor had continued to communicate with Hobbs regarding the dates additional responses would be provided. The superior court concluded that the Auditor did not deny Hobbs access to the electronic records or metadata because providing records in

7

updated installments while his public records requests were still pending was not a "denial" of records for PRA purposes. CP at 1373. The superior court also concluded that the scope of the Auditor's search was adequate and that the Auditor reasonably interpreted Hobbs' public records requests. Finally, the superior court declined to reconsider issues it had resolved in its previous rulings. The superior court dismissed Hobbs' PRA action with prejudice. Hobbs appeals.

## ANALYSIS

Hobbs argues that the superior court erred by concluding that he had no cause of action based on the Auditor's December 21 first installment in response to his public records request. He also argues that the superior court erred by concluding that the Auditor's response letter was adequate, that the scope of the Auditor's search was reasonable, and that the Auditor reasonably interpreted Hobbs' public records request such that it had disclosed all requested documents. We disagree and affirm the superior court's dismissal of Hobbs' PRA claim.

We review agency actions challenged under RCW 42.56.030 through RCW 42.56.520 de novo. *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009). When interpreting a statute, we must determine and enforce the legislature's intent. *Rental Hous. Ass'n*, 165 Wn.2d at 536. Where the meaning of statutory language is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Rental Hous. Ass'n*, 165 Wn.2d at 536. When interpreting provisions of the PRA, we consider the PRA in its entirety to effectuate the PRA's overall purpose. *Rental Hous. Ass'n*, 165 Wn.2d at 536.

A.     PREMATURE LITIGATION

Hobbs contends that the superior court erred by allowing the Auditor to supplement its responses after he had filed suit to correct alleged violations of the PRA. Specifically, Hobbs

argues that any violations in the original installment were violations at the time they occurred and that he was entitled to penalties regardless of whether the violations were later corrected. Thus, Hobbs takes the position that a requestor is permitted to initiate a lawsuit *prior* to an agency's denial and closure of a public records request. The PRA allows no such thing. Under the PRA, a requestor may only initiate a lawsuit to compel compliance with the PRA *after* the agency has engaged in some final action denying access to a record.

1. No PRA Cause of Action Until After Agency Denies The Public Records Requested

Under RCW 42.56.550(1), the superior court may hear a motion to show cause when a person has "been denied an opportunity to inspect or copy a public record by an agency." Therefore, being denied a requested record is a prerequisite for filing an action for judicial review of an agency decision under the PRA. Although the statute does not specifically define "denial" of a public record, considering the PRA as a whole, we conclude that a denial of public records occurs when it reasonably appears that an agency will not or will no longer provide responsive records.

RCW 42.56.520 states, in relevant part,

> Denials of requests must be accompanied by a written statement of the specific reasons therefor. Agencies, the office of the secretary of the senate, and the office of the chief clerk of the house of representatives shall establish mechanisms for the most prompt possible review of decisions denying inspection, and such review shall be deemed completed at the end of the second business day following the denial of inspection and shall constitute *final agency action or final action* by the office of the secretary of the senate or the office of the chief clerk of the house of representatives for the purposes of judicial review.

(Emphasis added). The language in RCW 42.56.520 itself refers to "final agency action or final action." Thus, based on the plain language of the PRA, we hold that before a requestor initiates a

PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records.

Here, there is no dispute that the Auditor was continuing to provide Hobbs with responsive records until March 1, 2012, when the Auditor determined it provided all responsive documents to Hobbs' public records request. Therefore, there could be no "denial" of records forming a basis for judicial review until March 1, 2012. The plain language of the statute does not support Hobbs' claim that a requester is permitted to initiate a lawsuit before an agency has taken some form of final action in denying the request by not providing responsive documents.[6]

### 2. Initial PRA violations

Hobbs also argues that once an agency has allegedly violated the PRA, that PRA violation exists as a basis for penalties and costs from the time of alleged violation until it is cured, even if it is cured before the requestor would have a cause of action against the agency (i.e., when the agency takes final action in denying public records). In other words, if there were violations in the December 21 installment of records, he should be entitled to penalties and costs based on those violations from December 21 until the time the violations are cured. We disagree.

Hobbs cites four specific cases to support his contention that the superior court provided the Auditor with improper "do-overs" while litigation was pending, rather than ruling that he was entitled to penalties and fees because the Auditor had violated the PRA with its December 21 installment production. Br. of Appellant at 33. Specifically, Hobbs relies on *City of Lakewood v.*

---

[6] Here the Auditor was producing records in installments. We do not address the situation where an agency completely ignores a records request for an extended period.

*Koenig*,[7] *Sanders v. State*,[8] *Gronquist v. State Dep't of Licensing*,[9] and *Resident Action Council v. Seattle Housing Authority*.[10] Hobbs' reliance on these cases is misplaced.

First, this court's recent decision in *Koenig* is inapplicable to this case. There was a single issue presented in *Koenig*—whether a requestor is entitled to penalties based solely on an agency's violation of the "brief explanation" requirement. *Koenig*, 176 Wn. App. at 399. Neither party disputed whether the records were properly redacted, and the City did not argue that it subsequently cured the violation by later explaining the redactions. *See Koenig*, 176 Wn. App. at 399-400. Accordingly, *Koenig* does not address the issue of whether a requestor is entitled to penalties and fees for alleged violations of the PRA prior to the requestor having a cause of action under the PRA based on an agency's final action in denying requested records.

Second, like *Koenig*, *Sanders* does not address the issue of whether a requestor is entitled to penalties and fees for alleged PRA violations before the requestor has a cause of action. However, *Sanders* does seem to suggest that agencies may have the opportunity for "do-overs." Br. of Appellant at 33. In *Sanders*, our Supreme Court held that, if an agency violates the "brief explanation" requirement in RCW 42.56.210(3), the agency is not precluded from subsequently offering an explanation regarding how the claimed exemption applies. 169 Wn.2d at 847-48.

---

[7] *City of Lakewood v. Koenig*, 176 Wn. App. 397, 309 P.3d 610 (2013), *review granted*, 179 Wn.2d 1022 (2014).

[8] *Sanders v. State*, 169 Wn.2d 827, 240 P.3d 120 (2010).

[9] *Gronquist v. State Dep't of Licensing*, 175 Wn. App. 729, 309 P.3d 538 (2013).

[10] *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 300 P.3d 376, 327 P.3d 600 (2013).

Moreover, an agency is not precluded from arguing a different exemption applies to justify the redaction or withholding of a record after a lawsuit is initiated. *Sanders*, 169 Wn.2d at 847; *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 253, 884 P.2d 592 (1994). The agency's violation of the "brief explanation" requirement is only relevant insofar as it may increase the penalties imposed if documents are improperly redacted or withheld. *Sanders*, 169 Wn.2d at 848. Therefore, while *Sanders* fails to support Hobbs' assertion, *Sanders* does suggest that even when the agency actually violates the PRA, the agency is not foreclosed from later curing that violation by offering a satisfactory explanation for the redaction or withholding of documents.

Finally, neither *Gronquist* nor *Resident Action Council* address the issue of whether an agency can voluntarily cure an alleged violation of the PRA while the request remains open and the agency is actively engaging in efforts to fully respond to the request. In these two cases, the agencies maintained, in both the trial court and the appellate courts, that the documents at issue were either properly withheld or redacted. *Gronquist*, 175 Wn. App. at 746-54; *Resident Action Council*, 177 Wn.2d at 439-40. That is not the circumstance here. And *Gronquist* did not completely foreclose the possibility that an agency may voluntarily cure a PRA violation after litigation has commenced. Rather, *Gronquist* held that the agency's continued attempts to cure the violation during litigation were inadequate. 175 Wn. App. at 754.

Hobbs fails to cite to any authority to support his contention that an agency is categorically precluded from voluntarily curing alleged PRA violations while they are actively making reasonable efforts to fully respond to the public records request. However, Division Three of this court recently addressed a similar issue and its decision supports the assertion that agencies can

cure PRA violations by voluntarily remedying the alleged problem while the records request is open and the agency is actively working to respond to it.

In *Andrews v. Washington State Patrol*,[11] the Washington State Patrol (WSP) responded to a public records request by providing an estimated response date of May 1, 2012. 2014 WL 4627656 at *1. However, the WSP inadvertently forgot to send the requestor an extension letter explaining that there would be additional delays caused by the complexity of the request. *Andrews*, 2014 WL 4627656 at *1. On May 3, the requester filed a lawsuit alleging that the WSP violated the PRA by failing to respond to the request by their estimated response date. *Andrews*, 2014 WL 4627656 at *1. On May 9, the WSP responded to the requester explaining the complexity of the request and provided a new estimated time for responding to the request. *Andrews*, 2014 WL 4627656 at *1. On May 25, the WSP fully responded to the requester's public records request. *Andrews*, 2014 WL 4627656 at *2. The requester continued to argue that he was entitled to penalties for the entire period of time between the WSP's estimated response date and the date the WSP ultimately responded to the request. *Andrews*, 2014 WL 4627656 at *2-3.

The court disagreed and declined to impose a "mechanically strict finding of a PRA violation whenever timelines are missed." *Andrews*, 2014 WL 462757, at *5. Instead, the court held that the PRA did not require an agency to comply with its own self-imposed deadlines as long as the agency was acting diligently in responding to the request in a reasonable and thorough manner. *Andrews*, 2014 WL 4627656 at *5. Because the WSP acted diligently in its attempts to respond to the PRA request, and the WSP's "thoroughness of response [was] not an issue[,]" the

---

[11] No. 32288-2-III, 2014 WL 4627656 (Wash. Ct. App. Sept. 16, 2014).

court affirmed the trial court's order granting summary judgment in favor of the WSP. *Andrews*, 2014 WL 4627656 at *5.

Here, the Auditor consistently made every effort to fully comply with Hobbs' public records request and voluntarily cured each of Hobbs' alleged violations. The Auditor produced new exemption codes and explanations, produced updated copies of certain redacted pages, re-produced 17 copies of the letter closing the whistleblower investigation in order to address Hobbs' concern regarding the metadata, and consulted with the statewide technology audit team manager to develop a method of providing the documents in a format that Hobbs had requested. And Hobbs does not dispute that by the time of the final hearing, all of the issues he raised regarding the Auditor's response had been cured. When an agency diligently makes every reasonable effort to comply with a requestor's public records request, and the agency has fully remedied any alleged violation of the PRA at the time the requestor has a cause of action (i.e., when the agency has taken final action and denied the requested records), there is no violation entitling the requester to penalties or fees.[12]

---

[12] We stress that this opinion should not be read to encourage requestors to remain silent and wait until final agency action to voice concerns regarding agency actions or inaction. The purpose of the PRA is to encourage open and transparent government by ensuring public access to government records. RCW 42.56.030. As a policy matter, the purpose of the PRA is best served by communication between agencies and requestors, not by playing "gotcha" with litigation. In cases such as this, where an agency is making every effort to cooperate with a requestor to provide the requested records, there certainly cannot be any legitimate purpose served by initiating a lawsuit prior to the agency making a final decision regarding what documents it will and will not produce.

B.    INITIAL RESPONSE LETTER

Hobbs asserts that the Auditor violated the PRA by failing to properly provide a prompt response to his public records request. Although the Auditor sent Hobbs a response letter within the statutory five-day response period and included an estimated date for completion of the first installment in response to Hobbs' public records request, Hobbs contends that this response was insufficient because it did not provide him with an estimated date for completing the Auditor's entire response to his public records request. Hobbs is incorrect. The Auditor's response complied with the statutory five-day response period; thus, the Auditor did not violate the PRA.

RCW 42.56.520 governs an agency's initial response to a PRA request and states, in relevant part:

> Within five business days of receiving a public record request, an agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives must respond by either (1) providing the record; (2) providing an internet address and link on the agency's web site to the specific records requested, except that if the requester notifies the agency that he or she cannot access the records through the internet, then the agency must provide copies of the record or allow the requestor to view copies using an agency computer; (3) *acknowledging that the agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives has received the request and providing a reasonable estimate of the time the agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives will require to respond to the request;* or (4) denying the public record request.

(Emphasis added). In addition, RCW 42.56.080 allows an agency to produce records on a "partial or installment basis." Here, the Auditor informed Hobbs that it would be producing the records in installments. We must, therefore, determine whether RCW 42.56.520 requires an agency to respond to a public records request by providing a reasonable estimate of when the agency will be able to provide the *completed* response to the request, or whether it is sufficient for the initial

15

response to include only a reasonable estimate of the time it will take the agency to produce the first installment of responsive records.

Under the PRA, there are two ways for an agency to "'respond'" to a public records request. The agency can (1) make the records available for inspection or copying, or (2) respond by including an explanation of the exemption authorizing the agency to withhold the record. *See Rental Hous. Ass'n*, 165 Wn.2d at 535 (quoting RCW 42.56.210(1) and (3)). The plain language of RCW 42.56.520 requires that the agency provide a reasonable estimate of the time required to respond to the request. Here, the Auditor provided a reasonable estimate of the time required to respond to Hobbs' public records request; the Auditor stated it would provide the first installment of records by December 16. As noted, an agency can make the records available on an installment basis. RCW 42.56.080. Because the Auditor complied with the plain language of RCW 42.56.520, we hold that the superior court did not err in finding that the Auditor complied with the prompt response requirement of the PRA.

However, Hobbs asks us to read additional language into RCW 42.56.520. Specifically, he asks us to interpret RCW 42.56.520 as requiring the agency to provide an estimate of the reasonable amount of time needed to fully or completely respond to the request. When interpreting a statute, "we 'must not add words where the legislature has chosen not to include them.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). Accordingly, we will not interpret RCW 42.56.520 to require agencies to provide an estimate of when it will fully respond to a public records request when the legislature has declined to include such language in the statute.

C.    SCOPE OF RECORDS SEARCH

Finally, Hobbs argues that the scope of the Auditor's records search was unreasonable because (1) the investigator assigned to investigate the whistleblower complaint did not search all of her electronic records and provided the employees responsible for responding to the request with paper copies of the files she kept; (2) it did not include "Outlook appointment records, the investigator's diary of the time she spent on the investigation, and the invoices that were sent to the DSHS on the basis of the diary entries"; and (3) the Auditor failed to search its disaster backup tapes. Br. of Appellant at 46. We disagree.

"'The adequacy of a [records] search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents.'" *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012) (quoting *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 720, 261 P.3d 119 (2011)), *review denied*, 177 Wn.2d 1002 (2013). Washington courts have adopted the federal courts' reasonableness standard as articulated by the 10th Circuit Court of Appeals:

> "[T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search. The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case. The reasonableness of an agency's search turns on the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives."

*Forbes*, 171 Wn. App. at 866 (alterations in original) (internal quotation marks omitted) (quoting *Trentadue v. Fed. Bureau of Investigation*, 572 F.3d 794, 797-98 (10th Cir. 2009)). At a minimum, a person seeking documents under the PRA must identify the documents with sufficient clarity to allow the agency to locate them. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d 26

(2004). Agencies are not required to be mind readers. *Bonamy v. City of Seattle*, 92 Wn. App. 403, 409, 960 P.2d 447 (1998).

As an initial matter, Hobbs presents an incorrect characterization of the issue for our review. He points to specific pieces of the Auditor's records search (i.e., the search by one specific person) or to particular words in his request that he believes the Auditor did not adequately interpret. But we inquire into the scope of the agency's search as a whole and whether that search was reasonable, not whether the requestor has presented alternatives that he believes would have more accurately produced the records he requested.

Here, the Auditor assigned numerous people to conduct the search for relevant records in response to Hobbs' public records request, not just the investigator who had investigated the original whistleblower complaint. The people assigned to respond to Hobbs' public records request identified numerous search terms that would reveal records related to the whistleblower complaint. They used these terms to search numerous places where electronic documents were stored. The areas they searched included the Auditor's shared file system, e-mail files, and paper files. Over the course of responding to Hobbs' public records request, the Auditor identified thousands of pages of documents, including prior versions of documents, backup versions of documents, Outlook e-mails, documentation regarding meetings and appointments related to the investigation, and numerous other documents.

Hobbs complains that this search was not reasonable because the Auditor did not (1) search the backup tapes kept off-site specifically for disaster recovery; (2) uncover particular "documents," such as tabs from file folders; and (3) require the original whistleblower case investigator to read Hobbs' entire public records request before copying her files for the employees

gathering documents to compile a response. These alleged "failings" do not render the Auditor's records search unreasonable. Rather, the record shows that the Auditor performed a comprehensive search of its paper and electronic files using numerous terms meant to comprehensively identify records related to the whistleblower complaint and investigation that was the subject of Hobbs' public records request. Simply because Hobbs later identified additional documents he believed fell within the scope of his request does not mean that the Auditor's search was unreasonable. We hold that the Auditor's search for records to produce in response to Hobbs' public records request was reasonable, and Hobbs' PRA claim fails.

D.    ATTORNEY FEES

Hobbs also requests attorney fees. RAP 18.1 allows us to grant attorney fees if authorized by statute. RCW 42.56.550(4) allows a person who prevails against an agency to be awarded costs and attorney fees. Here, Hobbs is not the prevailing party. Accordingly, he is not entitled to an award of attorney fees.

We affirm the superior court's dismissal of Hobbs' PRA action with prejudice.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Hunt, J.P.T.

19