

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROBERT NORTHUP, ) | DIVISION ONE |
| ) | |
| Respondent/Cross-Appellant, ) | No. 72256-5-I |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| DEPARTMENT OF CORRECTIONS, ) a subdivision of the State of ) Washington, ) | |
| ) | |
| Appellant/Cross-Respondent. ) | FILED: July 6, 2015 |
| _____ ) | |

DWYER, J. — The Department of Corrections appeals from an order granting prisoner Robert Northup's motion for summary judgment and awarding him penalties, attorney fees, and costs under the Public Records Act (PRA), chapter 42.56 RCW. The Department contends that the trial court erred by finding a violation of the PRA and by awarding Northup penalties as well as attorney fees and costs because—among other reasons—Northup had no cause of action under the PRA at the time he brought the relevant claims.[1] We agree and, accordingly, reverse and remand for the judgment to be vacated and the action dismissed.

I

## A. Northup's Public Records Request

In February 2013, the Department of Corrections received a public records request from Northup, an inmate in the Department's custody. This request

---

[1] Northup also cross appeals. Given our resolution of the matter, we do not reach any of the issues raised in his cross appeal.

contained nine parts, including a request for a "Copy of the FBI de-brief hearing of Robert Northup, #761654 sent via email to William Riley by Special Agent Michael Rollins" and a request for "All other emails from FBI Special Agent Michael Rollins to any staff member of the Department of Corrections from June 1, 2010 to January 1, 2013."

On February 25, 2013, within five business days of receiving the request, the Department sent a letter to Northup acknowledging the request and seeking clarification on part of the request. The Department notified Northup that it would identify and gather records and that it would provide a further response within 45 business days (by April 29, 2013). After the Department received clarification from Northup, it understood one portion of his request to be seeking any record in which his name was mentioned from June 1, 2010 until February 15, 2013.

Northup's request was assigned to Jamie Gerken, the manager of the Department's Public Disclosure Unit. She had worked in the unit for over six years and had received over 64 hours of formal public records training. She typically handled requests that were large, complex, or especially sensitive. Gerken described Northup's request as one of the most complex and time consuming of the approximately 1,280 requests that she had handled.

In response to Northup's request, the Department ran several computer searches in the Symantec Enterprise Vault. In total, over 17,000 e-mail were discovered that were potentially responsive to one of the items in Northup's request. Over 5,000 e-mail were potentially responsive to another portion of the request, and responding to this portion of the request required the Department to

conduct more detailed and complex computer searches in order to narrow the number of results and allow for a determination as to whether the e-mail were, in fact, responsive. Department staff also had to review sensitive records for redactions. While the Department reviewed these documents, it continued to produce other records that required less intensive review.

The Department notified Northup on April 29, 2013 that the first installment of records was available once payment was received. Upon receiving payment, the Department provided the first installment of records. Because Northup had requested that the records be sent to his attorney, the Department mailed the records to his attorney and mailed a letter directly to Northup informing him that the records had been sent.

The Department provided additional installments on July 17, 2013, September 3, 2013, and October 14, 2013.[2] The October 2013 installment contained a document concerning the debriefing of a confidential informant.[3] The inmate participated in the debriefing with law enforcement officers as part of the Department's process allowing an offender to renounce his gang affiliation. The 16-page "debrief" or confidential informant record was generated after the interview and contained detailed notes of the interview. The Department redacted information in the debrief, it stated, pursuant to RCW 42.56.240(1) and RCW 42.56.240(12).[4] The Department provided Northup's attorney with an

---

[2] These dates refer to the day on which the Department disclosed the records to Northup by making them available for his inspection and copying via a cost letter. See, e.g., Sanders v. State, 169 Wn.2d 827, 835-36, 240 P.3d 120 (2010); Mitchell v. Wash. Dep't of Corr., 164 Wn. App. 597, 603, 277 P.3d 670 (2011).

[3] Northup has identified himself as this confidential informant.

[4] RCW 42.56.240 provides, in pertinent part:

Agency Denial Form/Exemption Log which identified the basis for each of the redactions.

The Department continued to provide installments of requested records. Such installments were provided on November 21, 2013, January 7, 2014, February 12, 2014, and March 26, 2014. As of May 29, 2014, Northup's February 2013 request was still active and, in response thereto, the Department was continuing to search, gather, and review records.[5] As of that date, the Department had identified, redacted (where necessary), and produced 5,664 pages of responsive records and 1,104 native-format files in response to Northup's February 2013 request.

B. Procedural History

Northup filed this lawsuit in December 2012. His original complaint challenged an unrelated public records request from 2010. In June 2013, while the Department continued to respond to his February 2013 request, Northup amended his complaint to challenge the Department's response to the February 2013 request.

---

The following investigative, law enforcement, and crime victim information is exempt from public inspection and copying under this chapter:

(1) Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy;

. . .

(12) The following security threat group information collected and maintained by the department of corrections pursuant to RCW 72.09.745: (a) Information that could lead to the identification of a person's security threat group status, affiliation, or activities; (b) information that reveals specific security threats associated with the operation and activities of security threat groups; and (c) information that identifies the number of security threat group members, affiliates, or associates.

[5] This information was provided by Gerken in a declaration submitted to the trial court in support of the Department's motion for reconsideration.

-4-

In the trial court, Northup challenged the Department's redaction of the debriefing document. He also challenged the timeliness of a small number of e-mail that were made available to him on February 12, 2014, as part of the seventh installment of records.[6]

The Department moved for summary judgment arguing that Northup's claims related to the 2010 request were barred by the statute of limitation, that the redactions made to the debrief were authorized by RCW 42.56.240(1) and RCW 42.56.240(12), that the Department had otherwise complied with the PRA in its handling of Northup's February 2013 request, and that Northup's claims were not ripe because its response to his records request was not final but, rather, was ongoing. The trial court granted Northup's request for a continuance pursuant to Civil Rule 56(f) and set a briefing schedule.

Northup then filed a cross motion for summary judgment. The trial court heard argument on both parties' motions on April 16, 2014. Despite the fact that the Department had been continuing to produce responsive records, the trial court ruled that the Department violated the PRA in its production of the March 5, 2014 e-mail. The trial court took the remaining arguments under advisement to conduct an *in camera* review of the debrief document.[7]

The trial court issued an oral ruling on May 16, 2014 denying the Department's motion for summary judgment and granting Northup's cross motion for summary judgment. In addition to the violation previously found, the trial

---

[6] These e-mail were sent to Northup on March 5, 2014, after the Department had received payment for the seventh installment of records. The parties refer to them as the March 5, 2014 e-mail.

[7] The 16-page debrief document was filed under seal.

court ruled that 792 of the 799 redactions made by the Department to the debrief were improper. The court determined that the investigative records/intelligence information exemption found in RCW 42.56.240(1) did not apply because the debrief contained "generalized information only." The court also ruled that the exemption in RCW 42.56.240(12) did not apply because Northup knew the information contained in the debrief and, therefore, the debrief did not reveal any security threat group information to Northup. The court awarded daily penalties to Northup based on the court's analysis of the Yousoufian[8] factors. A written order reflecting the trial court's oral ruling was entered on June 12, 2014. In a separate order, entered on July 9, 2014, the Court also awarded Northup $20,000 in attorney fees and $553.50 in costs.

The court denied the Department's motion for reconsideration. The Department then filed a timely notice of appeal. The Department raises several issues on appeal. It contends (1) that the trial court was required to dismiss Northup's claims for lack of a cause of action, (2) that the trial court erred by ruling that the Department's response to Northup's public records request violated the PRA, (3) that the trial court erred by finding that the Department acted in bad faith, (4) that the trial court erred by awarding Northup daily penalties based on the PRA violations, and (5) that the trial court erred by awarding Northup attorney fees and costs.

Northup filed a cross appeal. Northup raises several issues in his cross appeal. The majority of these issues relate to the trial court's dismissal of his

---

[8] Yousoufian v. King County, 168 Wn.2d 444, 229 P.3d 735 (2010).

claims arising from the 2010 public records request. These claims were dismissed on summary judgment by order entered on January 14, 2014. However, Northup did not appeal from the trial court's order of January 14, 2014.[9] With regard to his 2013 request, Northup's primary claim is that the trial court's award of daily penalties was erroneously calculated.

II

The Department contends that Northup's lawsuit related to his 2013 request was brought prematurely. This is so, it asserts, because a cause of action under the PRA does not arise until the agency has taken final agency action. The Department's contention is consistent with Division Two's recent decision in Hobbs v. Wash. State Auditor's Office, 183 Wn. App. 925, 335 P.3d 1004 (2014).[10]

Hobbs concerned a public records request filed with the state auditor's office. In that case, the requestor, Hobbs, filed a lawsuit challenging the auditor's response to his request just two days after the auditor had provided him with the first of several anticipated installments of responsive records. While Hobbs' lawsuit was pending, the auditor continued to provide responsive records,

---

[9] Northup filed a motion seeking to amend his notice of cross appeal to include review of the trial court's order of January 14, 2014 dismissing his claims related to his 2010 public records request. Extension of the time period for appealing from a dispositive order or judgment is seldom granted. See Beckman v. Dep't of Social & Health Servs., 102 Wn. App. 687, 694, 11 P.3d 313 (2000). We will review a trial court order that was not designated in the notice of appeal only if the order prejudicially affects the decision that was designated in the notice. See RAP 2.4(b). Here, Northup asks us to review an order concerning a separate public records request that is unrelated to the order from which he timely appealed. Because Northup does not establish sufficient grounds for either (1) extending the time for filing his notice of appeal pursuant to RAP 18.8(b), or (2) expanding the scope of this court's review pursuant to RAP 2.4(b), his motion is denied. Given our resolution of the primary issue on appeal, Northup's motion to submit additional evidence on appeal, pursuant to RAP 9.11, is also denied.

[10] Hobbs had not been decided when the trial court rendered its decisions in this case.

- 7 -

ceasing only when it believed that it had provided all of the records that were responsive to Hobbs' request. The auditor also filed a motion in the trial court seeking a ruling that Hobbs had no cause of action with respect to the initial installments it had provided because, at the time the lawsuit was commenced, it was still in the process of responding to Hobbs' request and, therefore, could not yet have denied him access to any records. The trial court agreed with the auditor and dismissed Hobbs' claims.

On appeal, "Hobbs [took] the position that a requestor is permitted to initiate a lawsuit *prior* to an agency's denial and closure of a public records request." Hobbs, 183 Wn. App. at 935. Division Two rebuffed his contention, stating, "The PRA allows no such thing. Under the PRA, a requestor may only initiate a lawsuit to compel compliance with the PRA *after* the agency has engaged in some final action denying access to a record." Hobbs, 183 Wn. App. at 935-36.

The court's firm conclusion was driven by the plain language of the PRA. As the court explained,

> Under RCW 42.56.550(1), the superior court may hear a motion to show cause when a person has "been denied an opportunity to inspect or copy a public record by an agency." Therefore, being denied a requested record is a prerequisite for filing an action for judicial review of an agency decision under the PRA. Although the statute does not specifically define "denial" of a public record, considering the PRA as a whole, we conclude that a denial of public records occurs when it reasonably appears that an agency will not or will no longer provide responsive records.
>
>    . . .

.... The language in RCW 42.56.520[11] itself refers to "final agency action or final action." Thus, based on the plain language of the PRA, we hold that before a requestor initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records.

Hobbs, 183 Wn. App. at 936.

Applying these principles to the facts present therein, the Hobbs court concluded:

Here, there is no dispute that the Auditor was continuing to provide Hobbs with responsive records until March 1, 2012, when the Auditor determined it had provided all responsive documents to Hobbs' public records request. Therefore, there could be no "denial" of records forming a basis for judicial review until March 1, 2012. The plain language of the statute does not support Hobbs' claim that a requester is permitted to initiate a lawsuit before an agency has taken some form of final action in denying the request by not providing responsive documents.

183 Wn. App. at 936-37.[12]

Here, there is no dispute that the Department was continuing to provide Northup with records responsive to his February 2013 request in June 2013, when he brought his claims challenging the Department's response. In fact, the Department continued to provide installments of records to him periodically through the entire period of the underlying litigation, ceasing only after the trial court's oral pronouncement on summary judgment. Therefore, at the time that Northup asserted his cause of action in his complaint, there was no final agency

---

[11] RCW 42.56.520 provides, in pertinent part: "Denials of requests must be accompanied by a written statement of the specific reasons therefor. Agencies . . . shall establish mechanisms for the most prompt possible review of decisions denying inspection, and such review . . . shall constitute *final agency action*." (Emphasis added.)

[12] The court did not address the situation in which an agency completely ignores a records request for an extended period, because, in the case at hand, the auditor was producing records in installments. Similarly, in this case, the Department continued to produce records in installments throughout the period of superior court litigation.

action that constituted a denial of records and, thus, formed a basis for judicial review of the Department's response. Northup, in short, did not have a cause of action when he asserted that he did have a cause of action. The superior court erred by not granting the Department's motion to dismiss.

III

The Hobbs decision forecloses another of Northup's contentions with regard to whether he possessed a cause of action at the time he pleaded it in his complaint.

Hobbs contended that,

> once an agency has allegedly violated the PRA, that PRA violation exists as a basis for penalties and costs from the time of alleged violation until it is cured, even if it is cured before the requestor would have a cause of action against the agency (i.e., when the agency takes final action in denying public records).

183 Wn. App. at 937. Northup makes a similar argument herein.

The Hobbs court rejected this contention, relying on Division Three's recent decision in Andrews v. Washington State Patrol, 183 Wn. App. 644, 334 P.3d 94 (2014), review denied, 182 Wn.2d 1011 (2015).[13]

> Division Three of this court recently addressed a similar issue and its decision supports the assertion that agencies can cure PRA violations by voluntarily remedying the alleged problem while the records request is open and the agency is actively working to respond to it.
>
> In Andrews . . . , the Washington State Patrol (WSP) responded to a public records request by providing an estimated response date of May 1, 2012. However, the WSP inadvertently forgot to send the requestor an extension letter explaining that there would be additional delays caused by the complexity of the

---

[13] Andrews also had not been decided when the trial court rendered its decision in this case.

request. On May 3, the requester filed a lawsuit alleging that the WSP violated the PRA by failing to respond to the request by their estimated response date. On May 9, the WSP responded to the requester explaining the complexity of the request and provided a new estimated time for responding to the request. On May 25, the WSP fully responded to the requester's public records request. The requester continued to argue that he was entitled to penalties for the entire period of time between the WSP's estimated response date and the date the WSP ultimately responded to the request.

The court disagreed and declined to impose a "mechanically strict finding of a PRA violation whenever timelines are missed." Instead, the court held that the PRA did not require an agency to comply with its own self-imposed deadlines as long as the agency was acting diligently in responding to the request in a reasonable and thorough manner. Because the WSP acted diligently in its attempts to respond to the PRA request, and the WSP's "thoroughness of response [was] not an issue," the court affirmed the trial court's order granting summary judgment in favor of the WSP.

Hobbs, 183 Wn. App. at 939-40 (alteration in original) (footnote and citations omitted) (quoting Andrews, 183 Wn. App. at 653-54).

Elucidating upon the holding in Andrews, the Hobbs court held,

When an agency diligently makes every reasonable effort to comply with a requestor's public records request, and the agency has fully remedied any alleged violation of the PRA at the time the requestor has a cause of action (i.e., when the agency has taken final action and denied the requested records), there is no violation entitling the requester to penalties or fees.

183 Wn. App. at 940-41.

Thus, two relevant principles emerge from Hobbs. First, a claim alleging a PRA violation may not be brought until the responding agency takes final action respecting the relevant request. Second, before it takes final action with respect to a public records request, a responding agency may remedy a deficiency in an

- 11 -

earlier installment and, thereafter, the earlier deficiency may not form the basis of a claim for an award of penalties or fees under the PRA.

Herein, the trial court ruled that the Department's response to Northup's public records request violated the PRA in two ways, found that the Department acted in bad faith with respect to those violations, and awarded Northup penalties and fees related to the violations—all while the Department's response was ongoing. Pursuant to the decisions in <u>Hobbs</u> and <u>Andrews</u>, with which we concur, the superior court's rulings in this regard were erroneous.

Reversed and remanded for the judgment to be vacated and the complaint to be dismissed.

We concur: