# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JERRIE O'CONNOR, an individual, | No. 55111-0-II |
| Respondent/Cross-Appellant, | |
| v. | |
| LEWIS COUNTY, a political subdivision of the state of Washington, | ORDER AMENDING OPINION TO CORRECT CAPTION |
| Appellant/Cross-Respondent. | |

The Court on its own motion amends the unpublished opinion filed on November 9, 2021, to correct in the caption the case name of Appellant/Cross-Respondent to: LEWIS COUNTY, a political subdivision of the state of Washington. We do not amend any other portion of the opinion or the result. Accordingly, it is

> **SO ORDERED**
>
> **PANEL:** Jj. Maxa, Lee, Cruser
>
> **FOR THE COURT:**

_____

LEE, JUDGE

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| JERRIE O'CONNOR, an individual, | No. 55111-0-II |
| Respondent/Cross-Appellant, | |
| v. | |
| LEWIS COUNTY, a political subdivision of the station of Washington, | UNPUBLISHED OPINION |
| Appellant/Cross-Respondent. | |

LEE, C.J. — Lewis County appeals the superior court's order ruling that the County violated the Public Records Act, chapter 42.56 RCW, (PRA). Jerrie O'Connor cross-appeals the superior court's order ruling that the County did not commit certain PRA violations. Because the County was continuing to fulfill O'Connor's PRA request at the time she filed suit, the complaint was premature and the superior court erred by denying the County's motion for summary judgment dismissal of O'Connor's PRA lawsuit. Therefore, we reverse and remand to the superior court for entry of summary judgment in favor of the County dismissing the complaint.

FACTS

A. O'CONNOR'S PRA REQUEST

On June 25, 2019, attorney Lauren Berkowitz submitted a PRA request to the County on behalf of Jerrie O'Connor. Berkowitz requested "[a]ll billing records received from or made to any [of] the law firms Michael & Alexander and Fisher Phillips, or any person employed by those

firms, arising from the tort claim and/or lawsuit filed by Jerrie O'Connor." Clerk's Papers (CP) at 40 (italics omitted).

The County responded to the PRA request on June 28, within five business days of receiving the request. Casey Mauermann, the County's Public Disclosure Manager, responded to the request on the County's behalf via the County's public records online portal. Mauermann identified herself as the person assigned to fulfill O'Connor's PRA request and said she would coordinate with other County departments in the collection, review, and production of responsive records. Mauermann's response to O'Connor stated that

> [w]hen a records request is for a large volume of records, the County may elect to provide records on an installment basis. You will not be charged any fees related to this request until you are provided with a cost estimate, either an installment estimate or estimate of the anticipated cost for the full request, whichever is more applicable. You will then have an opportunity to amend or withdraw your request if you wish to avoid paying the accompanying fees.

CP at 39. Mauermann provided August 1 as the time estimate for a status update or cost estimate. Mauermann also asked O'Connor to "please await the cost estimate. Conversely, if the County encounters a need to extend our estimate, you will be contacted with a revised estimated date." CP at 39.

Mauermann began to collect responsive records from various County departments and cross-referenced documents to check for completeness and potential redactions. Mauermann reached out to several County departments that would likely have responsive records, asked for assistance in producing records, and confirmed which offices did not have responsive records. At the time of O'Connor's PRA request, the County Auditor had recently switched billing systems, so it possessed both paper and electronic records on a new electronic system. Mauermann spent

several hours attempting to learn how to use this new electronic system to process O'Connor's request. Mauermann also had to individually review each paper record from the County Auditor, compare it to an index, and determine its responsiveness. Mauermann's assistant left employment with the County in early August, a little over one month after O'Connor's PRA request was filed. Mauermann found out on June 27 that the County's risk management department would likely possess responsive records, but the County's risk manager left County employment "[s]hortly after the request came in." CP at 398. Mauermann gathered responsive records from the County's risk management department sometime before September 13.

No communication from either party occurred on or before August 1. The next communication about the PRA request occurred on September 13, when the County provided O'Connor with a cost estimate of $3.16. In the message providing the cost estimate, the County stated that

> [w]hile the County and this office continues to desire to provide full assistance to members of the public who make public records requests, we also desire to prevent excessive interference with other essential functions. As a result, we intend to close this particular public records request on October 14, 2019 unless $3.16 is remitted.

CP at 38. O'Connor sent a check for the cost estimate on September 13, and the County received O'Connor's check on September 16.

On September 24, the County acknowledged receipt of payment and provided O'Connor with a link to the responsive records. In this message to O'Connor, the County stated:

> The County will continue to attempt to locate additional responsive records and we anticipate providing a status of our search results or a cost estimate for responsive records to you on or before October 22, 2019. If you have not received a response in that time, please do not hesitate to contact me directly inquiring as to the status. Of course, if we locate responsive records prior to this date we will provide them

3

to you promptly. Conversely, if the County encounters a need to extend our estimate, you will be contacted with a revised estimated date.

CP at 37.

Also on September 24, Berkowitz replied that she received the records but did not see any records for 2019. Berkowitz stated that the employment lawsuit was ongoing and asked Mauermann to "please re-check your records to make certain that all invoices have been provided in response to my request[.]" CP at 37. She noted that this was "not a new request, but a follow up to my original request for records." CP at 37.

C.    INITIATION OF PRA LAWSUIT

On October 3, O'Connor filed a lawsuit against the County, alleging that the County had violated the PRA. The complaint alleged two causes of action: a denial of access claim under RCW 42.56.550(1) and an unreasonable estimate of time claim under RCW 42.56.550(2). The denial of access claim stated that the County "deprived the Plaintiff of access to the records requested by her attorney, amounting to a de facto denial or withholding of records." CP at 3.

D.    POST-COMPLAINT RESPONSES AND COMMUNICATIONS

On the morning of October 4, one day after O'Connor filed her complaint, a Lewis County attorney sent a note to Mauermann. That note said, "Ms. Berkowitz is under the impression that this request is closed, when the last correspondence from the county indicates we are continuing to process the request. Please respond to that effect." CP at 36. In the afternoon of October 4, Mauermann responded to Berkowitz telling her that her "records request is open and we are still processing and searching for records." CP at 36. Mauermann also reiterated that the County planned to provide a status update on or before October 22, 2019.

4

On October 22, the County gave a status update that the County had identified 147 pages for the next installment of records. The County told O'Connor that the County was finalizing redactions, would provide a cost estimate by October 30, and would contact O'Connor if the records were finalized in advance of that time estimate. The County provided this cost estimate on October 28. After receiving payment, the County released the second installment of responsive records on November 18. In this message, the County stated that it anticipated providing another status update or cost estimate by December 10.

On December 6, the County sent a message to O'Connor that the PRA request remained ongoing, that the County was continuing to compile records, and that it expected to provide those records on or before December 18. The County also responded to a recent inquiry from Berkowitz about the duplicity of the next installment.

On December 18, the County provided the third and final installment of responsive records to O'Connor's PRA request. In its message forwarding the third installment of responsive documents, the County stated that "[t]he County considers this particular request fulfilled and is now closed." CP at 436.

E.    PROGRESSION OF PRA LAWSUIT

On October 23, 2019, the County answered O'Connor's complaint. The County denied liability for the denial of access claim and claimed that suit was barred "because no final action has been taken and it reasonably appeared that the County would continue to produce records before Plaintiff prematurely filed their suit." CP at 7. In response to the unreasonable estimate of time claim, the County admitted "that an unreasonable estimate of time was given" and agreed that

O'Connor was "entitled to attorneys' fees and costs to date on their <u>second cause of action only</u>." CP at 7.

On October 28, the County filed a motion for summary judgment dismissal of O'Connor's complaint. The County asked the superior court to dismiss the denial of access claim as unripe because the County had not taken final action and was still responding to the request. The County also asked the court to enter judgment in favor of O'Connor and against the County on the unreasonable estimate of time claim. O'Connor accepted an offer of judgment from the County on the unreasonable estimate of time claim. On November 15, the superior court entered a stipulated judgment against the County, which fully settled O'Connor's unreasonable estimate of time claim.

Both parties provided briefing on the merits of the denial of access claim and the County's summary judgment motion. The parties included copies of messages between the parties on the public records online portal, a transcript of Mauermann's deposition, and declarations outlining the facts above.

On January 3, 2020, the superior court denied the County's summary judgment motion because "[t]he facts in [*Hobbs v. State*, 183 Wn. App. 925, 335 P.3d 1004 (2014)] were quite different from those in the case at hand as it related to the agency's diligence and communication with the requestor." CP at 610. The superior court ruled that the third installment, and only that installment, constituted a denial of records by means of delay. The superior court also ruled that "[t]he record does not establish that Lewis County acted in bad faith, with ill will, or with discriminatory motive in processing Plaintiff's records request." CP at 611.

F.     PENALTIES, COSTS, AND FEES

On March 13, 2020, the superior court heard O'Connor's motion for penalties and fees. The superior court imposed a 30-day penalty of $10 per day, for a total of $300. The superior court decided to award O'Connor 50 percent of her requested attorney fees and costs due to its finding that one out of three records installments constituted a denial of access.

The superior court entered an order denying the County's motion for summary judgment, making findings of fact and conclusions of law on the merits, and imposing penalties, costs, and fees. The County filed a motion for reconsideration, which was denied.

The County appeals, and O'Connor cross-appeals.

ANALYSIS

A.     STANDARD OF REVIEW

"'The PRA mandates the broad disclosure of public records.'" *Freedom Found. v. Dep't of Soc. and Health Servs.*, 9 Wn. App. 2d 654, 663, 445 P.3d 971 (2019) (quoting *SEIU 775 v. Dep't of Soc. & Health Servs.*, 198 Wn. App. 745, 749, 396 P.3d 369, *review denied*, 189 Wn.2d 1011 (2017)), *review denied*, 194 Wn.2d 1017 (2020). "Accordingly, state agencies have 'an affirmative obligation to disclose records requested under the PRA unless a specific exemption applies.'" *Id.* (quoting *SEIU 775*, 198 Wn. App. at 749.) We review an agency's action in responding to a PRA request de novo and may examine any record from any prior proceeding. RCW 42.56.550(3).

We also review a summary judgment order de novo, engaging in the same inquiry as the superior court. *West v. City of Puyallup*, 2 Wn. App. 2d 586, 591-92, 410 P.3d 1197 (2018). Summary judgment is proper if there are no genuine issues of material fact and the moving party

7

is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A material fact is one upon which the outcome of the litigation depends. *Keck v. Collins*, 184 Wn.2d 358, 370 n.8, 357 P.3d 1080 (2015). Summary judgment is appropriate if reasonable persons could reach only one conclusion from the evidence presented. *Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019).

B.    PREMATURE DENIAL OF ACCESS CLAIM

The County argues that the superior court erred in denying its motion for summary judgment. Specifically, it argues that O'Connor's denial of access claim should have been dismissed as premature. We agree with the County and remand for the superior court to enter summary judgment in favor of the County dismissing the complaint.

A party may challenge an agency's denial of access to records under the PRA. RCW 42.56.550(1). "In an action challenging an agency's *denial* of a records request, a requestor cannot initiate a lawsuit until the agency has denied and closed the request at issue." *Freedom Found.*, 9 Wn. App. 2d at 664.[1] A denial occurs "when it reasonably appears that an agency will not or will no longer provide responsive records." *Hobbs*, 183 Wn. App. at 936. "When an agency produces records in installments, the agency does not deny access to the records until it finishes producing all responsive records." *Cortland v. Lewis County*, 14 Wn. App. 2d 249, 258, 473 P.3d 272 (2020), *review denied*, 196 Wn.2d 1039 (2021).

---

[1] *Freedom Found.* held that reasonable estimate of time claims under RCW 42.56.550(2) can be initiated before an agency denies and closes the request. 9 Wn. App. 2d at 664. The court distinguished reasonable estimate of time claims from denial claims, which cannot be initiated until the agency denies and closes the request. *Id.* Here, the only remaining claim is a denial claim.

Here, the County explicitly stated in its first response that the production of responsive records might come in installments, so O'Connor was on notice that the first installment might not be the final installment. The County then produced some responsive records on September 24. The County's message to O'Connor just before the initiation of this lawsuit stated, "The County will continue to attempt to locate additional responsive records and we anticipate providing a status of our search results or a cost estimate for responsive records to you on or before October 22, 2019." CP at 37. The County sent this message on September 24, which should have alerted O'Connor that the County had not completed its search and was still actively working on her request. Further, this message provided a new estimated response date of October 22, so O'Connor should have expected the County to continue its work on her request at least until that date.

O'Connor then filed suit with a denial of access claim on October 3. On that date, the record shows that the County had explicitly stated just over a week earlier that it was continuing to attempt to locate additional responsive records and would provide either a status update or cost estimate by October 22, 2019. In addition to the County informing O'Connor that it was continuing its efforts to locate additional responsive documents, O'Connor also asked the County to "re-check" its records for responsive documents just over a week before filing suit. CP at 37. Further, the County was producing records in installments, the first of which was produced on September 24, and did not finish producing all responsive records until December 18, more than two months after the complaint was filed. Though the County missed its first self-imposed August 1 deadline, the County did provide O'Connor with a cost estimate on September 13, released documents to O'Connor on September 24, and explicitly told O'Connor that it was continuing to

look for responsive records. Any confusion that may have resulted from the County missing this August 1 deadline was resolved by the time O'Connor filed her complaint on October 3.

Reasonable persons could reach only one conclusion here: the County was continuing to look for and provide responsive documents at the time O'Connor filed the complaint. Because it did not reasonably appear that the County would no longer provide responsive documents, the County did not deny nor close the request at issue before O'Connor initiated her PRA denial of access lawsuit. *See Hobbs*, 183 Wn. App. at 936. Because a requestor cannot initiate a denial of access lawsuit until their request has been denied and closed, this case was filed prematurely. *Freedom Found.*, 9 Wn. App. 2d at 664. Therefore, the case should have been dismissed on summary judgment.[2]

C.     PENALTIES, COSTS, AND FEES

Both parties argue that the superior court erred in its determination of the penalties, fees, and costs. Because we reverse and remand for dismissal of the complaint, we also reverse the superior court's decision on penalties, fees, and costs.

The PRA provides that

[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

RCW 42.56.550(4).

---

[2] This denial of access claim was the only remaining claim in O'Connor's suit because the superior court had already entered a stipulated judgment against the County on the unreasonable estimate of time claim. Because we reverse the superior court's ruling that the County violated the PRA by denying access to documents and remand to dismiss the complaint, we do not reach O'Connor's cross-appeal.

Here, the superior court awarded penalties, fees, and costs to O'Connor because she was a prevailing party. However, as discussed above, the superior court should have granted the County's motion for summary judgment and dismissed O'Connor's remaining denial of access claim. Had O'Connor's complaint been dismissed, she would not have been the prevailing party. Therefore, we reverse the superior court's decision on penalties, attorney fees, and costs.

ATTORNEY FEES ON APPEAL

O'Connor argues that she is entitled to an award of attorney fees on appeal. We disagree.

We may grant an award of reasonable attorney fees on appeal to a party that requests it in its opening brief, and as long as applicable law provides for such an award. RAP 18.1(a). As discussed above, "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded . . . reasonable attorney fees." RCW 42.56.550(4).

Here, O'Connor is not the prevailing party on appeal. Therefore, we deny O'Connor's request for attorney fees on appeal. RCW 42.56.550(4).

We reverse the superior court's finding of a PRA violation and imposition of penalties, attorney fees, and costs, and remand for the superior court to grant summary judgment in favor of the County and dismiss the complaint.

No. 55111-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____, J.
Maxa, J.

_____, J.
Cruser, J.

12