# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ARTHUR WEST, | No. 48110-3-II |
| Appellant, | |
| v. | |
| PORT OF TACOMA, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — Arthur West appeals the superior court's dismissal of a suit he brought against the Port of Tacoma (the Port) in January 2008 that alleged Public Records Act (PRA) violations from a December 2007 PRA request. The superior court dismissed the case pursuant to our holding in *Hobbs v. State*, 183 Wn. App. 925, 335 P.3d 1004 (2014). On appeal, West argues that the superior court err in dismissing his suit and in denying his motion to amend the complaint. Both parties argue they are entitled to an award of fees and costs.

We hold that *Hobbs* controls and the superior court did not err in dismissing West's suit. 183 Wn. App. at 936. We do not consider whether the superior court erred in denying West's motion to amend because West did not appeal that order. Finally, we hold that the Port is entitled to an award of fees and costs on appeal. We affirm the superior court's order dismissing the suit.

FACTS

A.    2007-2008: PUBLIC RECORDS REQUEST IS MADE AND SUIT IS FILED

On December 4, 2007, West e-mailed a PRA[1] request to the Port.  The executive director

of the Port responded the same day, telling West that Andy Michels, risk manager for the Port,

would be handling the request.  West's PRA request said:

> Please regard this as a formal request for the following records under RCW 42.56.
>
> 1. All records and communications concerning the South Sound Logistics Center [(SSLC)], from January 1, 2005 to present.
>
> 2. All correspondence or communication with Diane Sontag.
>
> 3. Any records related to potential transport of Uranium Hexaflouride [sic] through Thurston County or the SSLC.
>
> Thank you for your consideration.

Clerk's Papers (CP) at 503.

On December 6, Michels advised West "that the Port was gathering documents and that

the Port expected it would be December 21 before they would be available."  CP at 498.[2]

On December 21, Michels sent West the following e-mail:

> I anticipated sending you computer disks of SSLC documents today to respond to your request.  Due to the volume of documents I encountered unexpected difficulties in loading the documents to disks.  I am continuing to work this problem and expect to respond with an initial set of documents shortly.  Rather than wait for complete collection and review, I anticipate multiple distributions to you given the number of documents and the time required to review.

---

[1] Ch. 42.46 RCW.

[2] In his briefing, West states that there is no record of this communication, "so the [P]ort would have trouble establishing this at trial," but does not dispute that the communication took place.  Br. of Appellant at 16.  West also does not allege that the Port failed to respond to his request within the statutorily required five days.

CP at 504.

On December 26, West requested information about the Port's privilege log.[3] Michels and West communicated twice more that day.

On December 31, Michels e-mailed West:

This acknowledges your Public Record request and confirms the Port's prior communications to you in response. Please know that due to [the] broad scope of your request and the large volume of records which may be responsive, the Port will require additional time to gather, review records and respond. We expect to respond to your request on or before January 10th, 2008.

CP at 505. The Port assigned an additional employee to the production of the records responsive to West's request. That additional employee spent five to six hours per day gathering, reviewing, and processing the records.

On January 2, 2008, the Port hired Sound Legal Technologies, a data production firm to download the files of responsive records, organize the files in chronological order, and number the records for tracking. Sound Legal Technologies had trouble accessing the Port's server.

On January 10, the Port's attorney, Carolyn Lake, sent West an e-mail[4] stating:

On behalf of the Port of Tacoma, we again acknowledge your Public Record request and we follow up on the Port's prior communications to you in response. Please know that due to [the] broad scope of your request and the large volume of records which may be responsive, the Port will require additional time to gather, review records and respond.

Originally, we expect [sic] to respond to your request on or before January 10th, 2008. However, the Port needs additional time to respond. We will respond incrementally as sets of responsive records are gathered, reviewed and are available

---

[3] West asserts in his briefing that these communications happened and Michels asserts in his declaration that they happened. However, none of these communications are found in the record.

[4] This e-mail was sent at 8:38 PM on January 10.

for release. We currently expect to release the first batch of responsive records on or before January 17, 2007.

Please contact myself [sic] or Andy Michels at the Port if you have any question regarding this matter. Thank you.

CP at 506. Michels sent West an e-mail the next morning, January 11, that reiterated:

Mr. West - I know that Ms[.] Lake sent you an email last night acknowledging that due to the volume of documents the Port will need additional time to respond to your request. I want to affirm her comments with this email.

We currently expect to release the first batch of responsive records on or before January 17, 2007.

Please contact me if you have any question regarding this matter. Thank you.

CP at 507.

On January 14, West filed this suit against the Port. The suit alleged the Port had refused to comply with the PRA and had acted in bad faith. West's causes of action stated that the Port (1) "illegally and unconstitutionally violated RCW 42.56," (2) "created a cause of action for [d]eclaratory relief," (3) was negligent, and (4) potentially violated the "Harbor improvement Act." CP at 4.[5] The complaint requested relief in the form of "an order . . . declaring that defendant Port of Tacoma violated the PRA and their self imposed [sic] duty of transparency, and compelling disclosure of all requested records, and assessing penalties and costs." CP at 5. West also filed a motion for a show cause hearing regarding "why the requested records should not be disclosed." CP at 1202.

---

[5] West does not present any argument in his briefing regarding the superior court's dismissal of the causes of action he lists in paragraphs 4.2-4.4 of his complaint. Accordingly, we do not address them. RAP 10.3(a)(6); *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (declining to consider issues that were not argued in the briefing).

On January 16, Sound Legal Technologies delivered a complete copy of the responsive documents to the Port. The next day, the Port told West that it expected to release the first batch of responsive records on or before January 24. Another e-mail notified West that the Port expected these records would be available on January 28.

By January 22, the Port had gathered 47 volumes of responsive records, with each volume contained within a 3-inch binder. Of those 47 volumes, 19 consisted of "various documents," totaling 8,602 pages, and 28 volumes consisted of e-mails, totaling 10,336 pages.

On January 29, West reviewed the first set of records that the Port produced. West identified some of the records at the time as ones he would like to copy.

On February 8, the Port responded to the suit. The Port argued that the suit filing was premature because the Port was responding to West's public records request.

On February 11, the Port transmitted to West a privilege log pertaining to the first 15 of 47 volumes of responsive records.

By March 26, the Port had made 13 volumes of records available for West to review. At that time, Michels stated that 18 additional volumes "will be shortly available, and 16 volumes are pending review by legal counsel and staff." CP at 545.

On March 28, West and the Port appeared in Pierce County Superior Court on West's motion for a show cause hearing. The superior court denied West's motion because it was premature. The superior court further ruled, and the Port agreed, that the public records and privilege logs for the volumes identified as "Final or Near Release" on an index attached to the order would be made available by April 15, 2008, and that the remainder of the records or privilege logs would be available by May 1, 2008.

No. 48110-3-II

On April 15, the Port notified West that the records identified in the court order were available. On Thursday, April 17, West asked if he could view the records on "Monday [April 21] or Tuesday at 11:00-4:00." CP at 610. The Port responded:

> Yes; the logs for each volume of records disclosed are all available for review at the same time as the records. Would you like us to go ahead and have your own copy of each log ready for your pick up?

> I'll also check with the Port about the logistics for your requested records review on either Monday or Tuesday from 11-4 PM, and get back with you shortly.

CP at 612-13.

The Port never followed up on the times West requested, and West did not respond until Friday, April 18, when he said he would like copies of each log if there were not electronic copies of the logs. The Port agreed to make the copies. At 6:38 PM that night, West told the Port via e-mail that "I will be at the Port at 9:00 Monday morning to inspect the records. I expect any exemptions to disclosure that the Port seeks to assert to be filed with the Court and sent to me by then." CP at 612.

West did not show up on Monday. Instead, West sent an e-mail at 11:53 AM that morning, April 21, saying,

> Since counsel has intervened in the process and determined to make inspection of the SSLC records as difficult as possible, please be advised that I will be reviewing the records this Tuesday-Thursday, between the Hours of 10:00 and 5:00.

> Please inform me if any further court orders will be necessary to insure this review.

> Certified copies of all requested records will be required, per objection of counsel to admission of any non-certified documents in court.

CP at 615.

6

West did not show up to review the records the Port had produced on Tuesday, April 22. West sent an e-mail the following day at 4:22 PM saying, "Due to what can only be described as your criminal conspiracy to deny access to evidence, and continuing refusal to confirm appointments in a timely manner, I will be appearing at the Port offices tomorrow at 11:00 to inspect and obtain records." CP at 616.

The Port responded,

Thank you for writing to clarify your planned visit to the Port of Tacoma. Per your earlier emails, the Port of Tacoma has been prepared for your arrival and held records ready for your review in one of our conference rooms every day since 9:00 AM on Monday, April 21st. As you later revised your scheduled visit for Tuesday—Thursday of this week from 10: 00 AM—5: 00 PM, we have held space that space [sic] available for your used [sic] review and made available all of the currently released documents in that room for the entirety of your scheduled visits. Per your requested schedule, we will continue to make the space and those documents available tomorrow.

Since I will be out of the office tomorrow morning, please ask for Mr. Tri Howard when you arrive.

CP at 617-18. Later that night, at 10:13 PM, West sent an e-mail stating that he was being subjected to an "unreasonable run-around," that the Port was refusing to comply with the March 28 order, that he wanted "complete electronic copies of all disclosed records and for copies of all exemptions claimed," and that, "If I am not notified by 8:00 tomorrow morning that these records will be immediately transmitted I will conclude that each of you is [sic] deliberately obstructing access to them." CP at 617. West arrived after noon the next day to view the records, Thursday, April 24.

On May 1, the Port notified West that the next group of records and privilege logs were available for West to review. This group of disclosures consisted of 26 volumes of records, making a total of 51 volumes available for West's review. Those 51 volumes were made up of 6,870

records and 19,923 pages. The Port determined that 175 records were exempt and 97 records were released with redactions.

On May 2, a second show cause hearing was held on West's motion. The superior court denied West's requests to find the Port in contempt of the March 28 order and to join the Port of Olympia. The superior court also ordered the Port to provide West with the exemption logs.

On May 21, the Port provided the superior court with the withheld records for the superior court or a special master to perform an in-camera review. On May 30, the superior court ordered a special master be appointed.

On October 14, the Port filed updated privilege logs of withheld records with the court and provided copies for the special master. The Port reviewed the records that had been withheld when the Port decided to stop pursuing a particular cite for the SSLC. The Port determined that some of the previously withheld records could be disclosed. The Port notified West that new privilege logs and new records were released.

B.      2009: SPECIAL MASTER APPOINTED

On March 20, 2009, the superior court appointed a special master to review the records that were the subject of West's objection to the Port's disclosure. The special master completed the review on July 24. The special master identified four of the withheld documents that should be disclosed in full or in part, and affirmed the withholding of the remaining claimed exemptions. The Port moved to modify the special master's report, arguing that one of the documents identified by the special master for disclosure should not be disclosed.

C.      2011-2014:  SUIT DISMISSAL AND REMAND

On January 25, 2011, the superior court granted the Port's motion to dismiss this suit under CR 41(b).  *West v. Port of Tacoma*, No. 43004-5-II, slip op. at 5 (Wash. Ct. App. Feb. 20, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2043004-5-II%20%20Unpublished%20Opinion.pdf.  West appealed that dismissal.  *West*, No. 43004-5-II, slip op. at 5-7.

On February 20, 2014, we issued an unpublished opinion holding that the superior court erred in dismissing West's lawsuit.  *West*, No. 43004-5-II, slip op. at 1.  We reasoned that the superior court erred in dismissing the case under CR 41(b)(1) because the Port did not give West the requisite 10-days' notice, and erred in dismissing the case under CR 41(b)(2) because the superior court's letter did not meet the requirements for notice under CR 41(b)(2)(A).  *West*, No. 43004-5-II, slip op. at 8-9.  We further reasoned that the superior court's inherent authority did not permit it to dismiss a case because of West's dilatory behavior.  *West*, No. 43004-5-II, slip op. at 12.[6]  Accordingly, we vacated the order of dismissal and remanded the case for further proceedings to the superior court.  *West*, No. 43004-5-II, slip op. at 1.

D.      2015:  ON REMAND

On April 16, 2015, West moved for in-camera review of documents that the Port had not disclosed.  The order denying the motion was filed on May 4.

---

[6] In that opinion, we did not consider West's attempts to advance the merits of his PRA action against the Port and his arguments regarding the propriety of the superior court's appointment of the special master.  *West*, No. 43004-5-II, slip op. at 13, 15.  We reasoned that West was attempting to challenge decisions that were not appealable as a matter of right and were not within the scope of his appeal from the order of dismissal.  *West*, No. 43004-5-II, slip op. at 13, 15.

The May 4 order concluded that the 2014 opinion by this court did not address the orders that the superior court had made concerning the PRA and, therefore, the motion for in-camera review was moot because the orders that the superior court made regarding the PRA issues remained the law of the case. The order also adopted the special master's report and set a hearing to hear the Port's motion to modify the report.

The same day, West filed a motion for a show cause hearing on PRA violations. The following day, on May 5, West sought discretionary review from this court of the May 4 order. On May 8, West moved the superior court to reconsider its May 4 order, and requested the judge to recuse himself from the case. On May 27, the superior court granted West's motion to reconsider, and denied his requests for recusal.

On June 2, West filed a motion to amend his complaint. The superior court denied the motion to amend on June 12. On June 30, the superior court denied West's motion to reconsider the rulings from June 12.

On July 2, the superior court granted the Port's motion for a protective order regarding discovery.

On July 14, the superior court entered its order on West's motion to reconsider the May 4 order. The superior court vacated the May 4 order and ordered an in-camera review of the records that the Port withheld.

On August 3, West filed another notice seeking discretionary review from this court regarding "the Order of the [superior court judge] entered on June 30, 2015 and July 2, 2015, denying plaintiff's Motion to Amend and granting a protective Order limiting discovery." CP at 278. The record does not show we accepted discretionary review.

On September 4, the Port moved to dismiss the lawsuit under CR 12(b)(6) and CR 56. On November 20, the superior court granted the Port's motion to dismiss after a hearing. West appealed the superior court's ruling to this court the same day. West later moved for reconsideration of the November 20 order. The superior court denied West's motion to reconsider.

ANALYSIS

A. THE SUPERIOR COURT DID NOT ERR IN DISMISSING THE SUIT

West argues that the superior court erred in dismissing this suit. The Port moved to dismiss West's suit under CR 12(b)(6) and CR 56. We hold that the superior court did not err in relying on *Hobbs* and dismissing West's suit.[7]

1.  Standard of Review

We review PRA cases de novo. *Nissen v. Pierce County*, 183 Wn.2d 863, 872, 357 P.3d 45 (2015). We also review dismissals under CR 12(b)(6) de novo. *Worthington v. Westnet*, 182 Wn.2d 500, 506, 341 P.3d 995 (2015). Dismissals under CR 12(b)(6) are proper "only where there is not only an absence of facts set out in the complaint to support a claim of relief, but there is no hypothetical set of facts that could conceivably be raised by the complaint to support a legally sufficient claim." *Worthington*, 182 Wn.2d at 505.

If a party brings a motion to dismiss under CR 12(b)(6), but "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary

---

[7] West also argues that the superior court erred in denying his motion to reconsider the dismissal. That argument is not addressed for two reasons: (1) it was not designated in the notice of appeal and we did not grant a motion to accept an amended notice of appeal including the order denying reconsideration; and (2) we hold that the superior court did not err in dismissing this case, so the superior court similarly did not err in denying West's motion to reconsider.

judgment and disposed of as provided in [CR] 56." CR 12(b)(7). Affidavits submitted in a CR 12(b)(6) motion are "matters outside the pleadings" that convert the CR 12(b)(6) motion into a CR 56 summary judgment motion. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976).

Here, the superior court considered facts beyond those stated in West's complaint. *See, e.g.*, CP at 498 (Michels's declaration). Therefore, we treat the superior court's dismissal of West's suit as a decision on a motion for summary judgment. *Sea–Pac Co. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985).

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We review a superior court's decision on summary judgment de novo. *Didlake v. State*, 186 Wn. App. 417, 422, 345 P.3d 43, *review denied*, 184 Wn.2d 1009 (2015).

2. *Hobbs v. State*

In *Hobbs*, we considered a superior court's order dismissing Hobbs PRA claim against the State Auditor's Office. 183 Wn. App. at 928. Hobbs requested public records from the Auditor on November 28, 2011, including a large amount of technical information relating to the requested records. *Id.* at 929. The Auditor responded on December 2, acknowledging the request and stating that the first installment of records would be available after December 16. *Id*. The Auditor made the first installment available to Hobbs electronically on December 21. *Id.* at 929-30. Hobbs filed suit alleging PRA violations on December 23. *Id.* at 932.

The Auditor continued to respond to Hobbs's PRA request. *Id.* at 930. On December 30, the Auditor gave Hobbs a new copy of the previously provided documents, using a numbering

system created to correspond to explanations of the redactions. *Id.* The Auditor also told Hobbs that the next installment would be ready on January 13, 2012. *Id.*

On January 6, the Auditor informed Hobbs that the final installment would be ready on February 13. *Id.* However, on January 19, the Auditor informed Hobbs that the remaining records would not be available until March 1 due to technical issues. *Id.* at 931.

Between February 13 and 17, the Auditor sent Hobbs additional requested records, an updated copy of the December 30 documents addressing concerns Hobbs had raised, and an e-mail notifying Hobbs of further technical issues. *Id.* On March 1, the Auditor sent the remaining records and an e-mail stating that it believed it had provided all responsive documents. *Id.*

Multiple hearings ensued until the superior court issued its final order in November 2012. *Id.* at 934. The superior court's final order ruled that "providing records in updated installments while [Hobbs's] public records requests were still pending was not a 'denial' of records for PRA purposes." *Id.* (quoting the record).

On appeal, *Hobbs* held, "Under the PRA, a requester may only initiate a lawsuit to compel compliance with the PRA *after* the agency has engaged in some final action denying access to a record," and, though not specifically defined, "a denial of public records occurs when it reasonably appears that an agency will not or will no longer provide responsive records." *Id.* at 935-36. *Hobbs* reasoned that RCW 42.56.550(1) permits superior courts to hear motions to show cause "when a person has 'been denied an opportunity to inspect or copy a public record by an agency,'" and looked at other provisions within the PRA, such as RCW 42.56.520, which refers to "'final agency action or final action.'" *Id.* at 936 (emphasis omitted) (quoting RCW 42.56.550(1), .520). *Hobbs* concluded that the plain language of the statute dictates that "being denied a requested record is a

prerequisite for filing an action for judicial review of an agency decision under the PRA." *Id.* at 936-37.

Applying these conclusions to the facts, *Hobbs* held "that the Auditor was continuing to provide Hobbs with responsive records until March 1," and, "[t]herefore, there could be no 'denial' of records forming the basis for judicial review." *Id.* at 936-37. Accordingly, *Hobbs* held that the superior court did not err in dismissing the Hobbs's PRA suit against the Auditor. *Id.* at 946.

3. Application of *Hobbs* Requires Dismissal of West's Suit

Here, just as in *Hobbs*, there is no dispute that the Port responded to West's request within the five-day statutory window and provided West with an anticipated disclosure date for the first installment, but failed to meet that anticipated disclosure date. *Id.* at 930-32. Also, as in *Hobbs*, the Port maintained active communication with West about his request and produced multiple installments of records over several months, despite the initiation of a lawsuit before the production of records was completed. *Id.* Thus, the conclusion reached in *Hobbs* is necessarily the conclusion we reach here—that West's suit against the Port was premature under the plain language of the PRA because "being denied a requested record is a prerequisite for filing an action for judicial review of an agency decision under the PRA," and the Port had not "engaged in some final action denying access to a record" at the time West filed the suit. *Id.* at 936.

Because the suit was premature, West's complaint failed as a matter of law and dismissal was proper. CR 56(c). Therefore, we hold that the superior court did not err in dismissing West's suit against the Port.

4.    West's Other Arguments are not Persuasive

a.  Attempts to Distinguish *Hobbs*

i.  Allegedly Distinguishable Facts

West attempts to distinguish his suit from *Hobbs* by arguing that the Port had not delivered on its expected first installment production dates.  West's argument is not persuasive for several reasons.

First, *Hobbs* is factually similar to this case.  The Auditor in *Hobbs* also did not produce records on the date it initially estimated.  *Hobbs*, 183 Wn. App. at 929-30.

Second, the "PRA contains no provision requiring an agency to strictly comply with its estimated production date," but instead "gives an agency additional time to respond to a request based on the need to 'locate and assemble the information requested.'"  *Andrews v. Wash. State Patrol*, 183 Wn. App. 644, 651-52, 344 P.3d 94 (2014), *review denied*, 182 Wn.2d 1011 (2015) (quoting RCW 42.56.520).  *Hobbs* expressly adopted the *Andrews* holding and stated that the PRA "[does] not require an agency to comply with its own self-imposed deadlines as long as the agency was acting diligently in responding to the request in a reasonable and thorough manner."  *Hobbs*, 183 Wn. App. at 940.

Third, West does not contend, nor does he provide any evidence to support an inference, that the Port was not diligent in its efforts to fulfill the request.  Nor does West contend or provide any evidence to support an inference that the postponement of first installment's production was not in good faith.

Finally, and from a practical perspective, West made his request right as the winter holiday season typically begins, in early December 2007, and filed suit against the Port barely a month

later, on January 14, 2008. The Port communicated with West throughout the height of that holiday season, on December 21, 26, and 31. Therefore, the fact that West filed his suit before the Port had produced the first installment of records does not distinguish West's suit from *Hobbs* such that the legal principals explained in *Hobbs* are rendered inapplicable.

West also argues *Hobbs* does not control the outcome of this case because the plaintiff in *Hobbs* asserted a cause of action under RCW 42.56.550(1), and West asserted his cause of action under RCW 42.56.550(2). This argument fails because West did not assert a cause of action under RCW 42.56.550(2) nor did West seek the relief that a cause of action under RCW 42.56.550(2) would provide.

RCW 42.56.550 governs judicial review of agency actions and provides in part:

> (1) Upon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.

> (2) Upon the motion of any person who believes that an agency has not made a reasonable estimate of the time that the agency requires to respond to a public record request, the superior court in the county in which a record is maintained may require the responsible agency to show that the estimate it provided is reasonable. The burden of proof shall be on the agency to show that the estimate it provided is reasonable.

West's complaint did not identify RCW 42.56.550(2) as the basis for his cause of action, nor did it seek to have the superior court "require the responsible agency to show that the estimate it provided [wa]s reasonable." RCW 42.56.550(2). Instead, West's asserted cause of action under the PRA was that "[b]y their acts and omissions, defendants illegally and unconstitutionally

violated RCW 42.56, damaging plaintiff, the public, and the State, for which relief should issue as requested below." CP at 4. The relief West requested was that, "[t]hat an order issue under the 0seal of this Court declaring that defendant Port of Tacoma violated the PRA and their self imposed [sic] elevated duty of transparency, and compelling disclosure of all requested records, and assessing penalties and costs for each individual record that has been witheld [sic]." CP at 5. Therefore, West's argument that *Hobbs* is distinguishable because West sought relief under RCW 42.56.550(2) rather than RCW 42.56.550(1) fails because West's suit did not seek to "require the responsible agency to show that the estimate it provided is reasonable," which is the relief RCW 42.56.550(2) provides.

Finally, to the extent West's citations to *Violante v. King County Fire Dist. No. 20*, 114 Wn. App. 565, 59 P.3d 109 (2002), are intended to support an assertion that his complaint was necessary to get the Port to respond, this argument is not persuasive. *Violante* is older than *Hobbs* and was decided by Division One of this court. Therefore, even if the holdings *Violante* and *Hobbs* were in conflict, which we do not consider, the precedent set by *Violante* does not bind this court. *See*, Mark DeForrest, *In the Groove or in A Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level*, 48 GONZ. L. REV. 455, 487–88 (2013).[8]

---

[8] As Professor DeForrest explains:

> The Washington court system has a developed notion of vertical *stare decisis* regarding the binding nature of state supreme court decisions on the court of appeals, as well as an approach to the authority of the decisions of each division of the court of appeals. Decisions of the state supreme court are binding on all lower Washington courts, whether trial courts or the appellate court sitting in its divisions.

## ii. The *Hobbs* Holding is not Dicta

West argues that the holding in *Hobbs* that necessitates dismissal of his suit against the Port was dicta and not binding on this court. Specifically, West argues, "In [*Hobbs*], the Court actually reached the merits of Hobbs'[s] claims, and found no violation, making the portions of their ruling on the timing of Hobbs['s] suit obiter dictum inapplicable to cases where an actual violation of the PRA is present." Br. of Appellant at 36-37. We disagree.

"Obiter dictum" is Latin for "'something said in passing.'" and is, "'[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive).'" *Pierce County v. State*, 150 Wn.2d 422, 435 n.8, 78 P.3d 640 (2003) (quoting BLACK'S LAW DICTIONARY 1100 (7th ed. 1999)). "Obiter dictum" is generally abbreviated to "dicta." *State ex rel. Lemon v. Langlie*, 45 Wn.2d 82, 89, 273 P.2d 464 (1954). The conceptual distinction between a court's holding and what may be considered "dicta" has been explained: "The principal feature of holdings is that they are necessary to decide a case, and the principal feature of dicta is that they are not." Shawn J. Bayern, *Case Interpretation*, 36 FLA. ST. U. L. REV. 125, 129 (2009).

But as the United States Supreme Court recognized long ago,

> It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion. It is true that in this case the other reason was more dwelt upon and perhaps it was more fully argued and considered than section 3377, but we cannot hold that the use of the section in the opinion is not to be regarded as authority, except by directly reversing the decision in that case on that point, which we do not wish to do.

---

> Decisions of a division of the court of appeals are binding on all state trial courts, but not on the other divisions of the court of appeals.

*Id.* at 487–88 (2013) (footnotes omitted).

*Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340, 48 S. Ct. 194, 72 L. Ed. 303 (1928). That alternative holdings are not dicta, but are instead binding precedent, remains true today. *See, e.g.*, *Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1255-56 (11th Cir. 2017) (citing, among others, *Hitchcock v. Sec'y, Florida Dep't of Corr.*, 745 F.3d 476 (11th Cir. 2014) for the proposition, "[A]n alternative holding is not dicta but instead is binding precedent.").

Here, the first issue considered in *Hobbs* was whether "a requester is permitted to initiate a lawsuit *prior* to an agency's denial and closure of a public records request." 183 Wn. App. at 935. To that point, *Hobbs* held that "before a requester initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records." *Id.* at 936. Thus, the requirement that "there must be some agency action, or inaction, indicating that the agency will not be providing responsive records" before a PRA suit could be filed was the holding on the primary issue on appeal in *Hobbs*. *Id*. To the extent the *Hobbs* court provided further holdings for why the superior court did not err, they would be alternative holdings in *Hobbs*. Alternative holdings are not dicta, but instead provide binding precedent. *See, e.g.*, *Richmond Screw Anchor Co.*, 275 U.S. at 340.

b. Misplaced Reliance on This Court's Decision in a Previous Appeal

West argues that our 2014 opinion in this case "expressly held that the Port was not producing records at the time the suit was filed," when we said, "'the port repeatedly pushed back its expected release date.'" Br. of Appellant at 23 (quoting *West*, No. 43004-5-II, slip op. at 2). West's argument misunderstands the basis of our 2014 opinion.

Here, there is no dispute that the Port did not meet its first two expected installment delivery dates. However, under the PRA, West may only initiate a lawsuit to compel compliance with the PRA *after* the Port has engaged in some final action denying access to a record. *Hobbs*, 183 Wn. App. at 935. And the PRA does not require the Port to comply strictly with its estimated production dates. *Andrews*, 183 Wn. App. at 651-52. Therefore, the necessary conclusion is that dismissal as a matter of law was proper. *Hobbs*, 183 Wn. App. at 935.

Our 2014 opinion does not change the necessary conclusion dictated by *Hobbs* because the 2014 opinion only considered the propriety of dismissal only under CR 41 and expressly did not consider the PRA claims. *West*, No. 43004-5-II, slip op. at 13, 15. The issue in the 2014 appeal was whether the superior court properly based its dismissal on CR 41(b)(1), (2), or the superior court's inherent power. *West*, No. 43004-5-II, slip op. at 1. We held that dismissal under CR 41 was not proper because the notice requirements of CR 41(b)(1) and (2) were not met, and the superior court did not rely on its inherent authority in dismissing the case. *West*, No. 43004–5–II, slip op. at 1. We did not consider the arguments West made regarding the various superior court orders on the alleged violations of the PRA because the those issues were neither appealable as a matter of right nor were they within the scope of the appeal from the order of dismissal. *West*, No. 43004-5-II, slip op. at 13, 15. Thus, our 2014 opinion has no bearing on the issues in the current appeal, which concern whether West prematurely filed suit.

c. Waiver Argument is not Relevant

West argues that the Port waived any argument against superior court having jurisdiction over this case.[9] This argument is not relevant to the issue on appeal. On appeal, we are considering whether West's suit was prematurely filed and should be dismissed as a matter of law. Thus, West's challenge to the superior court's jurisdiction is not relevant to the issues presented to this court.

d. Appearance of Fairness and the Fifth Amendment Arguments Fail

West argues in a heading that the superior court "erred in failing to afford West an objectively impartial process in accord with the Appearance of Fairness and the 5th Amendment and in refusing to conduct a show cause hearing and determine if the court violated the PRA." Br. of Appellant at 44 (some capitalization omitted). These arguments fail.

First, West provides no further argument or citation for his assertions that the appearance of fairness doctrine or his constitutional Fifth Amendment rights were violated. As such, we need not consider these arguments further. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that where arguments are not supported by authority, this court does not consider them).

---

[9] West also asserts in a heading that the Port submitted to the superior court's jurisdiction under res judicata, collateral estoppel, and equitable estoppel. West provides no citations to legal authority to support his theory. Therefore, we need not consider this assertion. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that where arguments are not supported by authority, this court does not consider them).

Second, and as explained above, the superior court properly dismissed this case because it was filed prematurely. Therefore, the superior court did not err in failing to conduct a show cause hearing on the merits of the alleged PRA violations.

B.     THE ORDER DENYING THE MOTION TO AMEND IS NOT BEFORE THIS COURT

West argues that the superior court erred in denying his motion to amend his complaint. We do not consider this argument because the issue is not before us on appeal.

RAP 5.3(a) requires that a notice of appeal must "designate the decision or part of decision which the party wants reviewed." Generally, we will not review an order that was not designated in the notice of appeal. RAP 2.4(a). A caveat to this general rule is that we will also review those decisions designated in a notice for discretionary review, where such discretionary review has been accepted. RAP 2.4(a), RAP 2.3(e).

The party seeking discretionary review has "within the longer of (1) 30 days after the act of the trial court that the party filing the notice wants reviewed or (2) 30 days after entry of an order deciding a timely motion for reconsideration of that act." RAP 5.2(b). When seeking discretionary review, the noting party must pay the filing fee at the time the notice is filed. RAP 5.1(b).

In his notice of appeal, West sought this court's review of "the Order of the [superior court judge] entered on November 20, 2015." CP at 430.[10] The order entered on November 20, 2015

---

[10] Even in the amended notice of appeal that West moved this court to accept, the orders for which review was sought were the order to dismiss and the order denying reconsideration of the motion to dismiss, entered on November 20, 2015 and December 15, 2015, respectively.

by the superior court judge was the order "Granting Dismissing Suit." CP at 431. Thus, West did not designate the order denying his motion to amend in his notice of appeal.

The record does not show that we accepted review of West's notice of discretionary review relating to the superior court's order denying West's motion to amend the complaint. Instead, the record shows that West did not timely file the notice of discretionary review because it was not filed within 30 days of June 30, and the record does not show that West paid the filing fee.

Thus, West did not designate the superior court's denial of his motion to amend in his notice of appeal and there is no indication in the record that West's notice for discretionary review was accepted. Therefore, we do not consider West's argument that the superior court abused its discretion in denying his motion to amend the complaint. RAP 2.3(e), RAP 2.4(a), RAP 5.1(b), RAP 5.2(b).

## C.    ATTORNEY FEES AND COSTS ON APPEAL

Both parties request fees and costs on appeal. We decline to award fees to West and award fees and costs to the Port.

West requests fees under RAP 18.1 and RCW 42.56.550(4). Under RCW 42.56.550(4), a party prevailing against an agency in a PRA suit is entitled to an award of fees and costs. Because West does not prevail in this action, he is not entitled to an award of fees and costs.

The Port requests fees and costs under RAP 18.1, RAP 18.9, and RCW 4.84.185 for defending a frivolous appeal. Under RCW 4.84.185, an action is frivolous if, "considering the action in its entirety, it cannot be supported by any rational argument based in fact or law." *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 785, 275 P.3d 339, *review denied*, 175 Wn.2d 1008 (2012). Under RAP 18.9, an appeal is frivolous if it is so devoid of merit that there exists no

reasonable possibility of reversal. *In re Marriage of Healy*, 35 Wn. App. 402, 406, 667 P.2d 114, *review denied*, 100 Wn.2d 1023 (1983). Because West's appeal did not present debatable issues on which there was a reasonable possibility of reversal, we exercise our discretion and award attorney fees and costs to the Port.

We affirm the superior court's order dismissing the suit.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, A.C.J.

Sutton, J.