# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN WORTHINGTON, | No. 48980-5-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| WASHINGTON STATE LIQUOR & CANNABIS BOARD, | |
| Respondent. | |

BJORGEN, C.J. — John Worthington appeals from a grant of summary judgment in favor of the Washington State Liquor and Cannabis Board (Board) ruling that the Board did not violate the Public Records Act (PRA), chapter 42.56 RCW. He argues that (1) the Board did not engage in a reasonable search for responsive records, (2) the Board silently withheld responsive records, (3) the Board was required to provide a privilege and exemption log, (4) the trial court erred by denying reconsideration on the grounds of misconduct, (5) the trial court erred by denying reconsideration on the grounds of unfairness and irregularity in the proceedings, (6) the trial court erred by denying reconsideration on the grounds of error of law, (7) the trial court erred by denying reconsideration on the grounds of substantial injustice, and (8) the trial court erred by denying reconsideration on the grounds of cumulative error.

We hold that Worthington has not demonstrated a genuine dispute of material fact as to whether the Board properly responded to his public records request and that the trial court did not abuse its discretion by denying reconsideration. Accordingly, we affirm the trial court.

FACTS

1. John Worthington Request

On February 18, 2015, Worthington contacted Karen McCall, the rules coordinator for the Board, to "review the I-502[1] rule[-]making file." Clerk's Papers (CP) at 649. On February 23, Worthington went to the Board's headquarters to inspect the I-502 rule-making file and was given the Board's public records request form by Robert Schroeter, the director of operational support for the Board. On February 24, Worthington e-mailed Schroeter requesting electronic copies of several documents and asking, "[A]pparently there is a working rule[-]making file. Is that the rule[-]making file we looked at[?]" CP at 604.[2] On March 3, Schroeter acknowledged Worthington's public records request and assigned it Public Records Request (PRR)# 15-02-161. He responded to Worthington's question as follows:

> Although I have not personally maintained the rule[-]making file, my staff and I were pleased to accommodate the visit based upon your request made pursuant to RCW 34.05.370. Prior draft versions of the rule[-]making file, prior to adoption of the I-502 rules, no longer exist as rulemaking files are continuously updated until completed and finalized upon adoption of rules. This is the final rule[-]making file for the Board's original adoption of chapter 314-55 WAC that you inspected.

CP at 603.

On February 26, Worthington submitted another public records request to Schroeter for "the entire rule[-]making file for I-502 rule[-]making in an electronic format." CP at 610. On

---

[1] Initiative 502 legalized the possession and sale of marijuana subject to restrictions.

[2] The e-mail was not sent until after close of business on February 24, consequently the e-mail was not received until the next day.

March 5, Schroeter replied to Worthington's request, assigned it PRR# 15-02-170, and informed Worthington that it would take the agency until about May 7 to comply with his request. Because Worthington's request included all the material he had requested under his previous request, PRR# 15-02-161, Schroeter asked whether Worthington wanted to withdraw his earlier request. On March 5, Worthington e-mailed Schroeter stating, "Just go with the latter encompassing request not . . . [15-02-161]." CP at 612.

On April 8, Worthington e-mailed Melissa Norton, a board public records staff member, stating, "I would like to look at the I-502 rule[-]making file [as soon as possible]. CP 615. On April 16, Norton replied to Worthington as follows:

> As you know, we already have an existing request from you for all I-502 [r]ule[-]making files that has the PRR# of 15-02-170 and which is due for completion on May 7, 2015. We anticipate being able to provide all of those records electronically to you by that date. We also are providing you now with the link to the complete "initial I-502 Rule[-]making file." The link to those 6,000 plus pages is here: . . ., and those files will be available for download until May 3, 2015. Please let us know if this is still your desire or if this is a different and new request – and if so, please provide us with clarification as to exactly what you are requesting in terms of records.

CP at 615.

On May 7, 2015, Schroeter e-mailed Worthington regarding the completion of his records request:

> You e[-]mailed to us the following: "I am requesting the entire rule making file for I-502 rulemaking in an electronic format." You clarified subsequently that you wished this to be for all I-502 rule[-]making files, and we have previously provided to you a link and documents on or about April 16, 2015 (in PRR # 15-03-180) the entire 6,000+ pages encompassing the Initial I-502 [r]ule[-]making file. Therefor[e] in conjunction with that PRR#, the portion requesting the initial I-502 [r]ule[-]making file has been satisfied although I have included those files in the link below for your convenience. Additionally, for clarity's sake, you previously withdrew PRR# 15-02-161 which duplicated this request in large part.

CP at 620. Schroeter further stated that the files consisted of over 420 megabytes of data and that no responsive records were withheld or redacted. Schroeter also invited Worthington to contact him if he believed certain records were missing. Worthington did not contact Schroeter.

2.      Requests by Others

During the same period of time, several of Worthington's associates made similar public records requests for the I-502 rule-making file. On March 17, 2015, Elizabeth Hallock submitted a public records request for:

> [T]he complete rule[-]making file associated with the [Board's] rules regarding Initiative 502, specifically WAC 314-55-05 through and including 314-55-540, including any and all emergency rules that have ever been adopted regarding Initiative 502. . . .
>
> Upon inspection of the rule[-]making file, please provide me a privilege/exemption log of any records or portions of records that have been withheld from the rule[-]making file, including the claimed statutory exemption or privilege and a brief explanation of how the exemption or privilege applies to the record or portion of the record withheld. Please provide specific identification of each individual document that is withheld in its entirety, including but not limited to: type of document/description of document; date; author/sender; recipient (including cc's) if applicable; statutory exemption and brief explanation for withholding; number of pages.
>
> . . . .
>
> In addition, please send to me any correspondence and records, including metadata, regarding the "working" rule[-]making file.

CP at 628. Schroeter responded to Hallock's request on March 24, assigned it PRR# 15-03-105, and completed the request on May 11, after transmitting 661 megabytes of data to Hallock.

On June 20, 2015, Norton received an e-mail from John Novak, stating, "This is a public records request (RCW 42.56) for the complete I-502 rule[-]making file. I am asking for it in electronic form if possible." CP at 640. Norton responded to Novak's request on June 23, assigned it PRR# 15-06-125, and completed the request on September 15, after transmitting 467

4

megabytes of data to Novak. In her final communication, Norton stated, "In an effort to be over inclusive I am providing to you the most recent rule[-]making files as they relate to recreational marijuana. These records in addition to the installments provided to you previously are all of the recreational marijuana rule[-]making files to date." CP at 637. Subsequently, on October 21[3] Novak submitted another public records request for "all files from a previous request, #13-08-040." CP at 642.[4] Norton responded to the request on October 29, assigned it PRR# 15-10-208, and completed the request the same day after transferring 1.37 gigabytes of information.

3.     Trial Court Proceedings

On August 21, 2015, Worthington filed a complaint in superior court against the Board, alleging that the Board had violated the Public Records Act (PRA), chapter 42.56 RCW, by withholding records or otherwise interfering in his receipt of those records contrary to law. Worthington moved for summary judgment, and the State moved for judgment on the pleadings. At the hearing on the motions on December 4, the trial court stated:

> [Court]:    Whether or not that rule[-]making file is consistent with the [Administrative Procedure Act] (APA) is a different case.
>
>     . . . .
>
>     Mr. Worthington, I do have a lot of matters to get to. I hear your argument, and I'm not entirely sure that my ruling is inconsistent with what you're saying. What I have said is there may be a Public Records Act case here regarding [the] fullest assistance in terms of the communication between the parties on what was being requested by you. That is still alive in this case.
>
>     . . . .

_____

[3] The e-mail was sent after 5:00 p.m., consequently it was not received until October 22, 2015.

[4] PRR# 13-08-040 refers to a prior public records request submitted by Novak in August 2013. That request asked for "all Washington State Liquor Control Board documents and correspondence, internal and external, written or electronic, including meta data regarding the following: Washington State [Liquor] Control Board's rule[-]making file for I-502. . . . I am hereby requesting the time period covered of December 1, 2012 to present." CP at 635.

Your comments, Mr. Worthington, make me wonder whether we are on the same page here, because what you are describing is to me still [sic] alive in this case separate from the APA decision of what is or isn't a rule[-]making file.

Verbatim Report of Proceedings (VRP) (Dec. 4, 2015) at 16, 20-21. The trial court denied Worthington's motion for summary judgment and the Board's motion for judgment on the pleadings.

On April 1, 2016, Worthington and the Board presented cross-motions for summary judgment before a different judge, to whom the case had been reassigned. As part of its motion for summary judgment, the State submitted declarations from both Schroeter and McCall regarding their response to Worthington's public records request. Worthington argued that the record established that documents had been removed from the rule-making file and that the Board had silently withheld documents by failing to address the scope of his request. Worthington claimed that Schroeter's declaration was hearsay and not credible. He also contended that court records from a 2013 PRA case between Arthur West and the Board in which West requested disclosure of the I-502 rule-making file demonstrated that other documents should have been in the I-502 rule-making file. Worthington further asserted that the different amounts of data produced by Hallock's and Novak's requests (661 megabytes and 467 megabytes respectively) showed that the Board had withheld records from him.

The Board responded that the court records Worthington claimed demonstrated that some of the documents that had been removed from the rulemaking file involved a superior court decision that had no precedential effect and that the trial court's ruling in that case was never finalized because the case settled before the final ruling was filed. The Board further argued that the different data batch sizes disclosed to different requesters were the result of the broader requests and the lapse of time between the different requests, during which additional rule-

making occurred. The Board also argued that the different data sizes should not be considered dispositive evidence of withholding of documents because:

> First of all, it is not a one to one thousand calculation or a conversion as one might believe. It can – the size of data can differ depending on machines used to scan as well as any compression software. Also it can be accounted for in multiple different ways, and there is no authentication of this information that has been provided or any expert testimony about what these data sizes mean.

VRP (Apr. 1, 2016) at 22-23.

The trial court found that there were no genuine issues of material fact and that the Board did not violate the PRA as Worthington alleged. Accordingly, the court granted the Board's motion for summary judgment and denied Worthington's motion for summary judgment. Worthington filed an amended motion for reconsideration on April 25, 2016, and the trial court denied reconsideration on May 6 2016. Worthington appeals.

## ANALYSIS

### I. STANDARD OF REVIEW AND LEGAL PRINCIPLES

We review agency actions under the PRA de novo. *Neigh. All. of Spokane County v. County of Spokane*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). We also review a grant of summary judgment de novo and engage in the same inquiry as the trial court. *Id*. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We consider all facts and inferences in the light most favorable to the nonmoving party. *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011). Mere allegations, argumentative assertions, conclusory statements and speculation do not create a genuine issue of material fact. *Id*.

The PRA "'is a strongly worded mandate for broad disclosure of public records.'" *West v. State Dep't of Nat. Res.*, 163 Wn. App. 235, 242, 258 P.3d 78 (2011) (quoting *Hearst Corp. v.*

*Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)). We liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. *Id.* However, a person requesting records under the PRA must "identify the documents with sufficient clarity to allow the agency to locate them." *Hobbs v. State*, 183 Wn. App. 925, 944, 335 P.3d 1004 (2014). Furthermore, the PRA does not "'authorize indiscriminate sifting through an agency's files by citizens searching for records that have been demonstrated not to exist.'" *West*, 163 Wn. App. at 242 (quoting *Building Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 734, 218 P.3d 196 (2009)). An agency is not required to create or produce a record that does not exist. *Id.*

Rather, in evaluating an agency's response to a request for production of records under the PRA, we consider whether the agency's search was adequate, not whether responsive documents do in fact exist. *Neighb. All. of Spokane County*, 172 Wn.2d at 719-20. Our Supreme Court has explained that "[t]he adequacy of a search is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." *Id.* at 720. We have previously articulated the reasonableness requirement as follows:

> "[T]he focal point of the judicial inquiry is the agency's search process, not the outcome of its search. The issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate[,] [which is determined under] a standard of reasonableness, and is dependent upon the circumstances of the case. The reasonableness of an agency's search turns on the likelihood that it will yield the sought-after information, the existence of readily available alternatives, and the burden of employing those alternatives."

*Hobbs*, 183 Wn. App. at 944 (alterations in original) (internal quotation marks omitted) (quoting *Forbes v. City of Gold Bar*, 171 Wn. App. 857, 866, 288 P.3d 384 (2012)).

## II. VIOLATIONS OF THE PRA

In his briefing, Worthington broadly claims that the Board violated the PRA:

> by unreasonably delaying or denying disclosure of records, silently withholding records, failing to provide a reasonable estimate, failing to provide a proper privilege log identifying the withheld documents, destroying records, and failing to produce records in a timely manner or otherwise, failing to conduct a reasonable search and failing to assert valid exemptions.

Br. of Appellant at 23-24. However, Worthington offers argument only on the issues of reasonable search, absence of a privilege and exemption log, and silent withholding of records. The remainder of Worthington's alleged PRA violations are supported only by assertions and conclusions. We have previously explained that "'passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration,'" and that we generally do not consider "conclusory arguments that do not cite to authority." *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)). Therefore, we only consider Worthington's arguments relating to the issues of reasonable search, absence of a privilege and exemption log, and silent withholding of records.

A.      Reasonable Search

Worthington argues that the trial court erred by denying his motion for summary judgment on the issue of whether the Board's search for records was reasonable. Worthington contends that by focusing on terms such as "final" or "working," the Board artificially narrowed the scope of its record search. Br. of Appellant at 11-12. We disagree.

In his declaration, Schroeter discussed the procedure that the Board followed in processing Worthington's request, as well as recent expansions in the Board's records staff. Schroeter stated that during 2015, the Board's public records unit received on average 202 record requests each month and employed three full-time employees in its records staff. In the first two

months of 2016, the Board began to average about 300 public records requests per month and has since increased its records staff to five full-time employees.

In response to Worthington's request for the "the entire rule[-]making file for I-502 rule[-]making," Schroeter contacted McCall, the Board's rule-making coordinator, and asked her to provide relevant records for response. CP at 592. McCall provided Schroeter with "the entirety of the initial I-502 rulemaking file," as well as "supplemental documents for additional rule[-]making that the Board had engaged in pursuant to I-502." CP at 592. In his final communication with Worthington, Schroeter noted that "[n]o responsive records have been withheld and no information has been redacted," and told Worthington "if there are other records which you believe should be in this link that are responsive to your request, please feel free to contact me so that I can assist you directly." CP at 620. Schroeter also explained that "[o]ver the past 18 months, the Board has responded to 30 separate public record[s] requests submitted by Mr. Worthington" and that "[o]ver 80,244 pages of documentary records have been provided to Mr. Worthington in responding to these requests." CP at 595.

Worthington has not demonstrated that a dispute of material fact exists regarding whether the Board's interpretation of his record request was reasonable. Worthington requested "the entire rule[-]making file for I-502 rule[-]making." CP at 610. Under RCW 34.05.370(1), "[e]ach agency shall maintain an official rule-making file for each rule that it (a) proposes by publication in the state register, or (b) adopts. The file and materials incorporated by reference shall be available for public inspection." RCW 34.05.370(4) further states, "Upon judicial review, the file required by this section constitutes the official agency rule-making file with respect to that rule." Therefore, Worthington has not demonstrated a genuine dispute of fact

about the object of his request: the Board's interpretation of his record request as targeting the rule-making file required by RCW 34.05.370 was reasonable.

Worthington has also not demonstrated that a dispute of material fact exists as to whether the Board's record search process was reasonably calculated to uncover all responsive documents. As noted, Schroeter contacted McCall regarding potential responsive documents. McCall is the rules coordinator for the Board, and part of her responsibilities include "maintaining the Board's official rule[-]making file for each rule[-]making the Board proposes by publication in the state register or adopts." CP at 644. In her declaration in support of the Board's motion in superior court, McCall explained that she keeps the Board's rule-making files as hard copies in the Board director's office and that it was her practice to create new files each time the Board engaged in further rule-making. McCall stated that she first provided the Board's public records unit with the "official rule[-]making file for the Board's initial adoption of rules to implement I-502" representing the first round of rule-making from 2013. McCall also stated that she later provided them "all rule[-]making files for rule[-]making that the Board had engaged in pursuant to I-502 subsequent to its initial rule[-]making process." CP at 645-46.

With these undisputed matters of fact, the Board's search procedure was reasonably calculated to uncover all responsive documents.

B.      Silent Withholding

Worthington asserts first that the different sizes of the record disclosures provided to Novak and Hallock raise a material issue of fact as to whether the Board silently withheld documents from him. We disagree.

Although Worthington characterizes the requests made by Novak and Hallock as substantially similar to his own, each request differs materially in terms of timing and scope. Worthington requested "the entire rule[-]making file for I-502 rule[-]making in an electronic format," on February 26, 2015. CP at 610. Hallock also requested the I-502 rule-making file, but also requested numerous other documents, such as "any correspondence and records, including metadata, regarding the 'working' rule[-]making folder." CP at 628. Thus, the fact that Hallock's records batch was larger than Worthington's does not create an issue of material fact as to whether the agency improperly withheld records from Worthington.

Like Worthington, Novak requested "the complete I-502 [r]ule[-]making file." CP at 640. However, Novak also initiated a second records request for "[a]ll Washington State Liquor Control Board documents and correspondence, internal or external, written or electronic, including meta data regarding the following: Washington State [L]iquor Control Board's rule[-]making file for I-502." CP at 635. The 1.37 gigabyte figure cited by Worthington relates to Novak's second request for documents, which requested records beyond the rule-making file. Thus, as with Hallock, the larger size of Novak's disclosure does not create an issue of material fact as to whether the agency improperly withheld records.

Worthington also claims that an oral ruling by the Thurston County Superior Court in a prior 2013 lawsuit between Arthur West and the Board demonstrates that the Board has withheld documents. However, in that case West and the Board entered into a settlement agreement before a final order was entered. Our Supreme Court has held that "[a] trial court's oral or

12

memorandum opinion is no more than an expression of its informal opinion at the time it is rendered. It has no final or binding effect unless formally incorporated into the findings, conclusions, and judgment." *State v. Mallory*, 69 Wn.2d 532, 533-34, 419 P.2d 324 (1966). In any event, "[s]tare decisis is not applicable to a trial court decision because 'the findings of fact and conclusions of law of a superior court are not legal authority and have no precedential value.'" *In re Estate of Jones*, 170 Wn. App. 594, 605, 287 P.3d 610 (2012) (quoting *Bauman v. Turpen*, 139 Wn. App. 78, 87, 160 P.3d 1050 (2007)). Further, in the absence of a final judgment Worthington may not invoke the doctrine of res judicata, despite the fact that the Board was a party to the prior lawsuit. *Id.* Therefore, the 2013 oral ruling by the Thurston County Superior Court in West's case does not create a dispute of material fact and has no precedential value to this proceeding.

The remainder of Worthington's argument asserts that Schroeter and McCall deliberately fabricated information in their declarations and purposefully withheld responsive records. This claim, however, is essentially a conclusory allegation that relies on out of context terminology taken from various individuals. For example, in his briefing, "Worthington alleges that [the Board] knew that Karen McCall had deferred to the [B]oard when determining what a rule[-]making file would be." Br. of Appellant at 33. In her declaration, McCall stated:

> If there were ever any doubt in my mind as to whether something belonged in the file I would have scheduled time to attend the executive management team meeting to allow the Board to make the final determination because I do not have the authority to make that kind of decision.

CP at 486. McCall also declared that:

> My position carries no authority to make any determinations with regard to what the rule[-]making file will consist of beyond the statutory requirements. My position is to "coordinate" the rule[-]making efforts by gathering information and enacting the decisions the Board makes with regard to rule[-]making.

. . . .

> When collecting documents forwarded to me by the Board members or agency staff, I do not check for duplicates, but place all of them in the working version of the file until the rule[-]making is concluded. Once rule[-]making is concluded I create the final rule[-]making file and remove duplicates as well as other documents that don't belong in the rule[-]making file because they don't pertain to the rule[-]making.

CP at 485-86. Thus, while McCall did defer to the Board, she only did so in situations where there was some doubt over whether a document should be placed in the rule-making file.

Therefore, to the extent that Worthington alleges that McCall acted as a mere conduit for the Board in creating and maintaining the rule-making file, that assertion is not supported by the record. Furthermore, Worthington's allegation that Schroeter provided false testimony through his declaration is similarly conclusory because it relies on the premise that McCall entirely deferred to the Board. We do not consider conclusory arguments unsupported by citation to authority or rational argument. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012). As such, Worthington has not demonstrated a dispute of material fact regarding the veracity of Schroeter's and McCall's declarations or whether they deliberately withheld responsive records. His argument therefore fails.

Worthington also claims that because Schroeter's and McCall's declarations were irrelevant and Schroeter's declaration was also hearsay, the declarations should have been excluded. Worthington argues that in the absence of these declarations, there is no evidence to support the Board's position that no responsive records were withheld.

Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Schroeter and McCall were directly involved in the

records request at issue in this case. Thus, their statements regarding the disclosure process were indisputably relevant.

Additionally, in claiming that Schroeter's declaration was hearsay, Worthington does not identify which aspects of Schroeter's declaration constitute hearsay and appears to interchangeably attribute the knowledge of the Board, McCall, and Schroeter to different individuals. We do not consider conclusory arguments unsupported by rational argument. *Mason*, 170 Wn. App. at 384. Therefore, we decline to consider these issues to the extent that they are conclusory and lack the support of reasoned argument.

For these reasons, Worthington does not demonstrate a dispute of material fact regarding any improper withholding of records, silent or otherwise.

C.      Privilege/Exemption Log

Worthington contends that the Board violated the PRA by failing to provide him with a privilege or exemption log. However, Schroeter informed Worthington that "[n]o responsive records have been withheld and no information has been redacted," in his final e-mail completing Worthington's request. CP at 620. Our Supreme Court has explained that "[w]hen an agency withholds or redacts records, its response 'shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld.'" *City of Lakewood v. Koenig*, 182 Wn.2d 87, 94, 343 P.3d 335 (2014) (quoting RCW 42.56.210(3)). The same requirement applies when an agency withholds or redacts documents on account of attorney-client privilege. *Block v. City of Gold Bar*, 189 Wn. App. 262, 279-80, 355 P.3d 266 (2015), *review denied*, 184 Wn.2d 1037 (2016). For the reasons set out above, Worthington presents no evidence that raises an issue of fact as to whether records were in fact withheld.

15

Because the Board did not redact or withhold any responsive records, it was not obligated to produce an exemption or privilege log. Therefore, Worthington's argument that the Board violated the PRA by not providing a privilege or exemption log fails.

D.      Application of RCW 34.05.370(2)(h)

Worthington argues that the trial court erred by granting summary judgment to the State because it declined to read the PRA in unison with the APA, chapter 34.05 RCW, specifically RCW 34.05.370(2)(h). We disagree.

As a preliminary matter, Worthington cites to RCW 34.05.370(h), which is not contained in RCW 34.05.370. Interpreting his reference to mean RCW 34.05.370(2)(h), it would have no application to these issues, since it specifies only that a rule-making file must contain, among other elements, "[a]ny other material placed in the file by the agency."

Interpreting, instead, Worthington's argument to refer to any matter required to be in a rule-making file by RCW 34.05.370, his contentions are supported only by "[m]ere allegations, argumentative assertions, conclusory statements, and speculation," the type of basis found insufficient to create a genuine issue of material fact by *Greenhalgh*, 160 Wn. App. at 714. Worthington argues that under the Board's position any agency could frustrate the PRA "by creating its own definitions of a rule[-]making file," and by "being allowed to shuffle documents in and out of the rule[-]making file at will without any consequences." Br. of Appellant at 17-18. He argues that the Board would "create non-statutory terms for a rule[-]making file governed by

a statute and turn the PRA into a perpetual game of go fish." Br. of Appellant at 26. He claims that the Board "placed documents in a public rule[-]making file and then removed them or concealed them . . . under the guise of a non-existent statutory 'final' copy of a rule[-]making file" under RCW 34.05.370. Br. of Appellant at 28.

Absent from this argument is any explanation of what nonstatutory terms the Board supposedly created or what documents it supposedly removed or concealed under the "guise of a non-existent . . . file." Absent also is any evidence supporting these bald accusations. For these reasons, under *Greenhalgh* Worthington has not raised any genuine issues of material fact relating to RCW 34.05.370. The trial court's decision not to consider RCW 34.05.370 in its decision on summary judgment was not erroneous.

### III. DENIAL OF RECONSIDERATION

Worthington asserts that the trial court abused its discretion by denying his motion for reconsideration. We review a denial of a motion for reconsideration under an abuse of discretion standard. *Brinnon Grp. v. Jefferson County*, 159 Wn. App. 446, 485, 245 P.3d 789 (2011). A trial court abuses its discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or if it was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no

reasonable person could arrive at that outcome. *Id.*

A.     <u>Misconduct</u>

Worthington argues that the trial court abused its discretion by not granting

reconsideration because Schroeter and McCall lied in their declarations and because Schroeter's

declaration is hearsay. However, as stated above, Worthington's assertion that Schroeter and

McCall lied is conclusory and takes several statements out of context. Furthermore, to the extent

that Worthington challenges Schroeter's and McCall's credibility, we do not review credibility

determinations on appeal. *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003). As

above, we decline to consider Worthington's hearsay argument because it is conclusory and fails

to articulate how or why Schroeter's declaration is hearsay. Worthington's arguments fail.

B.     <u>Relevance</u>

Worthington further contends that the trial court abused its discretion by not granting

reconsideration because Schroeter's and McCall's declarations are irrelevant. For the reasons

stated above, we find that Schroeter's and McCall's declarations are relevant to the issue of

whether the Board properly complied with Worthington's records request. Therefore, this

argument fails.

C.     <u>Error of Law</u>

Worthington asserts that the trial court abused its discretion by not granting

reconsideration because its decision was contrary to law. Specifically, Worthington claims that

the trial court erroneously ruled that he was required to inform the Board of missing documents

prior to filing suit and that McCall's use of terms such as "initial," "working," and "final" in her

declaration to describe her responsibilities under RCW 34.05.370 are contrary to the statute

because it does not contain those words. Br. of Appellant at 38, 41. We disagree.

First, the trial court did not require Worthington to request additional documents prior to

filing a lawsuit. Rather, the trial court, in evaluating the adequacy of the Board's record search,

stated:

> My view of the evidence here is that the agency did provide exactly what Mr.
> Worthington requested, and again, he was invited to let the State know that there
> was additional information that wasn't – that he believed hadn't been provided or
> that there was some way in which the [Board] was not responsive, and that never
> happened. I don't believe that there is a requirement that the [Board] should have
> known.

VRP (Apr. 1, 2016) at 37. In this statement, the trial court merely noted that Worthington was

invited to let the State know why he felt its response was inadequate. In no manner does this

require Worthington to request additional documents before filing suit.

In addition, Worthington does not explain or cite to authority beyond the arguments

rejected above to support his contention that McCall's use of "non-statutory terms" in describing

her procedures for maintaining the rule-making file amounts to a violation of RCW 34.05.370.

Because Worthington does not identify any evidence or authority to support his assertion, this

argument fails.

D.      Substantial Injustice

Worthington argues that the trial court abused its discretion by not granting

reconsideration because by excluding arguments regarding RCW 34.05.370, substantial justice

has not been done. For the reasons discussed in Part II.d of the analysis above, the trial court did

not err by excluding argument that RCW 34.05.370 had been violated.

E.    Cumulative Error

Worthington contends that the trial court erred by not granting reconsideration on the grounds of cumulative error. For support, Worthington cites *Storey v. Storey*, in which Division Three of our court affirmed the trial court's decision to grant a new trial because "[t]he cumulative effect of many errors may sustain a motion for a new trial even if, individually, any one of them might not." 21 Wn. App. 370, 374, 585 P.2d 183 (1978). Worthington's argument fails because he has not shown that the trial court erred in the first place.

## IV. ISSUES RAISED IN REPLY BRIEF

For the first time in his reply brief, Worthington argues that the trial court erred by determining that portions of his evidence were inadmissible and by failing to provide findings of fact and conclusions of law for review on this issue. He also argues that the trial court judge did not have the authority to sign an order prepared by the previous trial judge under RCW 2.28.030(2)[5] and that the trial court erred by ruling that Hallock received different documents because she requested the "working" copy. Reply Br. of Appellant at 9, 11. We do not consider issues that were raised and argued for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we decline to consider these issues.

---

[5] RCW 2.28.030(2) states, " A judicial officer is a person authorized to act as a judge in a court of justice. Such officer shall not act as such in a court of which he or she is not a member in any of the following cases: . . . (2) When he or she was not present and sitting as a member of the court at the hearing of a matter submitted for its decision."

CONCLUSION

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

WORSWICK, J.

LEE, J.